Filed 1/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>VELIA DUEÑAS,<br><br>        Defendant and Appellant. | B285645<br><br>(Los Angeles County<br>Super. Ct. No. 5VY02034) |

APPEAL from an order of the Superior Court of Los Angeles County, Eric P. Harmon, Judge. Reversed and remanded with directions.

Public Counsel, Kathryn Eidmann, Elizabeth Hadaway, Alisa Hartz, and Mark D. Rosenbaum for Defendant and Appellant.

Clare Pastore; Michael Kaufman and Devon Porter for American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California, and American Civil Liberties Union of San Diego and Imperial Counties, as Amici Curiae on behalf of Defendant and Appellant.

East Bay Community Law Center, Theresa Zhen and Brandon Greene for A New Way of Life Reentry Project, American Civil Liberties Union of Southern California, All of Us Or None—Los Angeles, All of Us Or None—San Francisco, Bay Area Legal Aid, California Association of Local Conservation Corps, California Reinvestment Coalition, Californians for Safety and Justice, Civicorps, Community Coalition, Contra Costa County Public Defender, Contra Costa Racial Justice Coalition, Drug Policy Alliance, East Bay Community Law Center, Ella Baker Center, Equal Justice Society, Essie Justice Group, Hillary Blout, Homeboy Industries, Law Enforcement Action Partnership, Lawyers Committee for Civil Rights of the San Francisco Bay Area, Legal Services of Northern California, Legal Services for Prisoners with Children, Neighborhood Legal Services of Los Angeles County, Root & Rebound, and Rubicon Programs, as Amici Curiae on behalf of Defendant and Appellant.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, A. Howard Matz and Peter A. Goldschmidt for Los Angeles County Bar Association, Beverly Hills Bar Association, Bar Association of San Francisco, and Western Center of Law and Poverty, as Amici Curiae on behalf of Defendant and Appellant.

Albert J. Menaster, Head Deputy Public Defender (Los Angeles) for Los Angeles County Public Defender, as Amicus Curiae on behalf of Defendant and Appellant.

Michael N. Feuer, City Attorney, Debbie Lew, Assistant City Attorney, and Rolando P. Reyes, Deputy City Attorney, for Plaintiff and Respondent.

Jackie Lacey, District Attorney (Los Angeles), Phyllis C. Asayama and Matthew Brown, Deputy District Attorneys, as Amicus Curiae on behalf of Plaintiff and Respondent.

_____

Velia Dueñas, an indigent and homeless mother of young children, pleaded no contest to driving with a suspended license. The trial court placed her on probation, imposed $220 in fees and fines, and ordered that if an outstanding debt remained at the end of her probation, the amount due would go to collections without further order of the court. Dueñas contends that imposing the fees and fine without considering her ability to pay violates state and federal constitutional guarantees because it simply punishes her for being poor. We agree. "Whatever hardship poverty may cause in the society generally, the judicial process must make itself available to the indigent; it must free itself of sanctions born of financial inability." (*Preston v. Municipal Court* (1961) 188 Cal.App.2d 76, 87-88, quoted in *Jameson v. Desta* (2018) 5 Cal.5th 594, 623.)

Because the only reason Dueñas cannot pay the fine and fees is her poverty, using the criminal process to collect a fine she cannot pay is unconstitutional. Accordingly, we reverse the order imposing court facilities and court operations assessments, and we remand the case to the trial court with directions to stay the execution of the restitution fine until the People prove that Dueñas has gained an ability to pay.

## FACTUAL AND PROCEDURAL BACKGROUND

Dueñas is a married mother of two young children. She has cerebral palsy, and because of her illness she dropped out of high school and does not have a job. Dueñas's husband is also unemployed, although occasionally he is able to obtain short-term work in construction.

The family of four receives $350 per month in CalWorks cash benefits and $649 per month in CalFresh food stamps benefits. Dueñas uses all the money she receives to take care of the children, but she cannot afford basic necessities for her family. She has no bank account and no credit card. She owns only her clothing and a mobile phone, and her mobile phone service is frequently disconnected because she cannot afford the $40 per month payment.

The family has no home of their own; they alternate between staying at Dueñas's mother's home and the home of her mother-in-law. The electricity was cut off to her mother-in-law's home because the family could not afford to pay the bill.

### A. Prior Legal Proceedings

When Dueñas was a teenager, she received three juvenile citations. She could not afford to pay the $1,088 she was assessed for these citations. Because she could not pay her debt, her driver's license was suspended. Dueñas was unable to have her driver's license reinstated because she could not afford the fees, and she did not qualify for the state amnesty program.

Over the next several years, Dueñas suffered three misdemeanor convictions for driving with a suspended license and one conviction for failing to appear on a driving without a

4

license case. In these cases, Dueñas was offered the ostensible choice of paying a fine or serving jail time in lieu of payment. Each time, she could not afford the fees, so she served time in jail—a total of 51 days across four cases. Additionally, she was sentenced to 90 days in jail for driving with a suspended license. In total, Dueñas was sentenced to 141 days in jail for driving with a driver's license that had been suspended because she had been unable to pay her juvenile citations.

Even after serving her jail time, Dueñas remained liable for court fees associated with each misdemeanor conviction. In one case, she was also ordered to pay attorney fees. She was unable to pay those amounts, and they were sent to collections. Dueñas receives letters from collection agencies, but she has no way to pay off her debt.

B. Present Proceedings

On July 13, 2015, Dueñas pleaded no contest to another misdemeanor charge of driving with a suspended license (Veh. Code, § 14601.1, subd. (a)) based on a plea agreement that conditioned the consequences for the conviction on whether she obtained a valid driver's license by the time of the sentencing hearing. If Dueñas returned to court on the date of sentencing without a valid license, she would be fined and sentenced to 30 days in jail. If Dueñas returned with a valid license, however, the court would place her on 36 months summary probation and impose a $300 fine.

At the February 22, 2016 sentencing hearing, Dueñas did not have a valid driver's license and was prepared to surrender that day. The court asked if Dueñas wished to "save money and

5

convert the $300 [fine] to 9 days of county jail," and her counsel said, "Yes.  She doesn't have the ability to pay."

The court suspended imposition of sentence and placed Dueñas on 36 months summary probation on the condition that she serve 30 days in county jail and pay $300, plus a penalty and assessment, or that she serve 9 additional days in custody in lieu of paying the $300 fine.  The court imposed a $30 court facilities assessment under Government Code section 70373, a $40 court operations assessment under Penal Code section 1465.8, and a $150 restitution fine under Penal Code section 1202.4.  The trial court also imposed and stayed a probation revocation restitution fine.  (Pen. Code, § 1202.44.)

Dueñas asked the court to set a hearing to determine her ability to pay "the attorney fees [she had previously been assessed] and court fees."  She advised the court that she was homeless and receiving public assistance.  The court said such a hearing could be held in the future, if needed:  "She has three years to pay them.  If it gets near the time where she can suffer a consequence as a result of not paying them, which would almost never be the case, we can set a hearing at that time."

Citing Penal Code section 987.8, subdivision (b), which provides that a court may order a defendant who has been represented by a public defender to pay attorney fees only if the court determines he or she has the present ability to pay all or part of the cost of legal assistance, Dueñas again asked the court to conduct an ability to pay hearing.  The court asked if it had to hold the hearing before it imposed fees or only to have a hearing "before she suffers the consequences of not being able to pay them."  Dueñas advised the court that as a matter of due process,

6

"before you can impose the fees there must be an ability-to-pay hearing."

After what the court described as "searching for some sort of case law" to support Dueñas's position, the court declared it would hold an ability to pay hearing. The court imposed "all the other fines and fees," and ordered that Dueñas serve her 39 days in county jail, see the court's financial evaluator, and return to court in three weeks for an ability to pay hearing on the attorney fees.

Dueñas pointed out that she would be unable to serve her sentence and see the financial evaluator within three weeks. Her counsel suggested that given that Dueñas was homeless, "it might be simpler to do it here in court" rather than require her to see the financial evaluator. The court said that it did not make sense for it to "sort through the documents myself" and that she should "avail herself of the expertise of the financial evaluator." The court offered some flexibility in setting the date of the hearing but cautioned, "I don't want to get into the habit of having litigants determine what day they want to come back." The court also stated its belief, which was inaccurate, that if Dueñas were to be unable to appear for the hearing, the fees and fines would not be sent to collections or transformed into a civil judgment.

At the March 17, 2016 ability to pay hearing, the court reviewed Dueñas's uncontested declaration concerning her financial circumstances, determined that she lacked the ability to pay the previously-ordered attorney fees, and waived them on the basis of her indigence. The court concluded that the $30 court facilities assessment under Government Code section 70373 and $40 court operations assessment under Penal Code section 1465.8

were both mandatory regardless of Dueñas's inability to pay them.  With respect to the $150 restitution fine, the court found that Dueñas had not shown the "compelling and extraordinary reasons" required by statute (Pen. Code, § 1202.4, subd. (c)) to justify waiving this fine.  The court rejected Dueñas's constitutional arguments that due process and equal protection required the court to consider her ability to pay these fines and assessments, and ordered her to pay $220 by February 21, 2019.  The trial court told Dueñas that, "[i]f in the end you're not able to pay, you won't be punished for it.  Those [sums] will go to collections without any further order from this court."

The superior court appellate division affirmed the trial court's order. We granted Dueñas's petition to transfer the case to the Court of Appeal.  (Cal. Rules of Court, rule 8.1002.)

## DISCUSSION

"Raising money for government through law enforcement whatever the source—parking tickets, police-issued citations, court-imposed fees, bills for court appointed attorneys, punitive fines, incarceration charges, supervision fees, and more—can lay a debt trap for the poor.  When a minor offense produces a debt, that debt, along with the attendant court appearances, can lead to loss of employment or shelter, compounding interest, yet more legal action, and an ever-expanding financial burden—a cycle as predictable and counterproductive as it is intractable." (*Rivera v. Orange County Probation Dept.* (2016) 832 F.3d 1103, 1112, fn. 7.) The record in this matter illustrates the cascading consequences of imposing fines and assessments that a defendant cannot pay.

As the trial court noted, this matter "doesn't stem from one case for which she's not capable of paying the fines and fees," but

from a series of criminal proceedings driven by, and contributing to, Dueñas's poverty. Unable to pay the fees for citations she received when she was a teenager, Dueñas lost her driver's license. Like many who are "faced with the need to navigate the world and no feasible, affordable, and legal option for doing so" (*Thomas v. Haslam* (M.D.Tenn. 2018) 329 F.Supp.3d 475, 521), she broke the law and continued to drive. As a result, Dueñas now has four misdemeanor convictions for driving without a valid license. These, in turn, have occasioned new fines, fees, and assessments that she is unable to pay. As the trial court described it, the repeat criminal proceedings have caused her financial obligations to "snowball."[1]

Dueñas argues that laws imposing fines and fees on people too poor to pay punish the poor for their poverty. These statutes, she asserts, are fundamentally unfair because they use the criminal law, which is centrally concerned with identifying and punishing only blameworthy decisions, to punish the blameless failure to pay by a person who cannot pay because of her poverty. The laws, moreover, are irrational: they raise no money because people who cannot pay do not pay. We conclude that due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under

---

[1] In recognition of the counterproductive nature of this system and its tendency to enmesh indigent defendants in a cycle of repeated violations and escalating debt, the Legislature recently amended several statutes to prohibit the courts and the Department of Motor Vehicles from suspending a driver's license because of an unpaid traffic citation. (Stats. 2017, ch. 17, §§51-54, eff. Jun. 27, 2017.)

9

Penal Code section 1465.8 and Government Code section 70373. We also hold that although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine.

I. The Court Facilities and Court Operations Assessments Must Be Subject to an Ability to Pay Determination

A. The Statutory Scheme

Government Code section 70373 and Penal Code section 1465.8, which impose court facilities and court operations assessments on every criminal conviction, each provide that the assessment "shall be imposed on every conviction for a criminal offense" except for parking offenses. (Gov. Code, § 70373, subd. (a)(1); Pen. Code, § 1465.8, subd. (a)(1).)

Neither fee is intended to be punitive in nature. (*People v. Alford* (2007) 42 Cal.4th 749, 757 [Pen. Code, § 1465.8]; *People v. Fleury* (2010) 182 Cal.App.4th 1486, 1492-1494 [Gov. Code, § 70373].) Both were enacted as parts of more comprehensive legislation intended to raise funds for California courts. Penal Code section 1465.8 was enacted in 2003 as part of a law that increased a number of court-related fees, including small claims court filing fees, civil litigation filing fees, civil motions fees, and appellate filing fees; it also imposed new court fees, such as a fee for complex litigation, probate filing fees, and a fee for certain court reporter services. (Assem. Republican Bill Analysis of Assem. Bill No. 1759 (2003-2004 Reg. Sess.).) Originally, Penal

Code section 1465.8 provided that its purpose was "[t]o ensure and maintain adequate funding for court security" (Stats. 2003, ch. 159, § 25); in 2011 the Legislature amended the statute to specify that the purpose was "[t]o assist in funding court operations." (Stats. 2011, ch. 40, § 6.)

Government Code section 70373 was enacted in 2008 as part of a law that raised funds for court facilities by increasing existing fees or imposing new fees in trust and estate proceedings; for the violation of license, registration and mechanical requirements of the Vehicle Code; for certain parking offenses; and for persons attending traffic violator school. (Legis. Counsel's Dig., Sen. Bill No. 1407, Stats. 2008, ch. 311.) Government Code section 70373 provides that its purpose is "[t]o ensure and maintain adequate funding for court facilities." (Gov. Code, § 70373, subd. (a)(1).)

Although it enacted these fee-generating statutes to raise funds for court operations and facilities, the Legislature has recognized the deleterious impact of increased court fees on indigent people. The Legislature has declared that "our legal system cannot provide 'equal justice under law' unless all persons have access to the courts without regard to their economic means. California law and court procedures should ensure that court fees are not a barrier to court access for those with insufficient economic means to pay those fees." (Gov. Code, § 68630, subd. (a).) The Legislature has also declared that "fiscal responsibility should be tempered with concern for litigants' rights to access the justice system. The procedure for allowing the poor to use court services without paying ordinary fees must be one that applies rules fairly to similarly situated persons, is accessible to those

11

with limited knowledge of court processes, and does not delay access to court services." (Gov. Code, § 68630, subd. (b).)

Accordingly, the Legislature has provided for fee waivers for indigent litigants at the trial and appellate court levels that excuse them from paying fees for the first pleading or other paper, and other court fees and costs, including assessments for certain court investigations. (Gov. Code, § 68631.) Government Code section 68632 grants permission to proceed without paying costs to those receiving certain public assistance benefits, to those whose monthly income is 125 percent or less of government poverty guidelines, and to those who "cannot pay court fees without using moneys that normally would pay for the common necessaries of life for the applicant and the applicant's family." (Gov. Code, § 68632, subdivisions (a)-(c).)[2]

While this protective mechanism lessens the disproportionate burden that these fundraising fees present to indigent litigants in the civil context, the Legislature neither instituted nor rejected a corresponding safeguard for assessments attached to a criminal conviction. Both Government Code section 70373 and Penal Code section 1465.8 are silent as to the consideration of a defendant's ability to pay in imposing the assessments.

### B. For Those Unable to Pay, These Assessments Inflict Additional Punishment

The "constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow

---

[2]    Based on the uncontested evidence Dueñas presented in the trial court, she would be eligible for a fee waiver under Government Code section 68632.

12

no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" (*Griffin v. Illinois* (1956) 351 U.S. 12, 17 (*Griffin*).)

Accordingly, a state may not inflict punishment on indigent convicted criminal defendants solely on the basis of their poverty. In *In re Antazo* (1970) 3 Cal.3d 100 (*Antazo*), the California Supreme Court invalidated the practice of requiring convicted defendants to serve jail time if they were unable to pay a fine and a penalty assessment. (*Id.* at p. 103.) "Although a direction for confinement for default in payment of a fine may appear to apply equally to both the rich offender and the poor one, actually the former has the opportunity to escape his confinement while the right of the latter to pay what he cannot, is a hollow one." (*Id.* at pp. 103-104.) The California Supreme Court observed, "'The "choice" of paying [a] $100 fine or spending 30 days in jail is really no choice at all to the person who cannot raise $100. The resulting imprisonment is no more or no less than imprisonment for being poor, . . . .' [Citation.]" (*Id.* at p. 108; see also *id.* at p. 115 ["he was unable to obtain his freedom only because he was poor"].)[3]

---

[3] In this case, the trial court allowed Dueñas to serve jail time as an alternative to paying the $300 fine imposed as punishment for the offense. That fine, and the jail time she accepted in lieu of the fine, are not at issue in this appeal.

Citing *Antazo*, *supra*, 3 Cal.3d 100, with approval, the United States Supreme Court has held that the federal Constitution prohibits states from automatically revoking an indigent defendant's probation for failure to pay a fine and restitution. (*Bearden v. Georgia* (1983) 461 U.S. 660, 667-668 ["if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it"] (*Bearden*).) "If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. . . . But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides 'a substantia[l] reason which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate.' [Citation.]" (*Id.* at pp. 668-669, footnote omitted.)

Imposing unpayable fines on indigent defendants is not only unfair, it serves no rational purpose, fails to further the legislative intent, and may be counterproductive. A fine on indigent people "is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant cannot pay because he is indigent . . . . " (*Tate v. Short* (1971) 401 U.S. 395, 399; see also *Antazo*, *supra,* 3 Cal.3d 100, 114.) Poor people must face collection efforts solely because of their financial status, an unfair and unnecessary burden that does not accomplish the goal of collecting money. Punishing "someone who through no fault of

14

his own is unable to make restitution will not make restitution suddenly forthcoming. Indeed, such a policy may have the perverse effect of inducing the probationer to use illegal means to acquire funds to pay in order to avoid" the additional negative consequences. (*Bearden*, *supra*, 461 U.S. at pp. 670-671.)

The People argue that *Griffin*, *supra*, 351 U.S. 12, *Antazo*, *supra*, 3 Cal.3d 100, and *Bearden*, *supra*, 461 U.S. 660, are inapposite because while the defendants in those cases faced imprisonment on the basis of their poverty, Dueñas is subject only to a civil judgment that she cannot satisfy. The United States Supreme Court has rejected the argument that the principles of *Griffin* and its progeny are restricted to instances in which a defendant is subject to imprisonment. (*Mayer v. City of Chicago* (1971) 404 U.S. 189, 196-197.) Moreover, the People do not dispute that, whether considered as a criminal penalty or as a civil judgment, Dueñas faces significant consequences if she blamelessly fails to pay her assessments. "As legislative and other policymakers are becoming increasingly aware, the growing use of . . . fees and similar forms of criminal justice debt creates a significant barrier for individuals seeking to rebuild their lives after a criminal conviction. Criminal justice debt and associated collection practices can damage credit, interfere with a defendant's commitments, such as child support obligations, restrict employment opportunities and otherwise impede reentry and rehabilitation. 'What at first glance appears to be easy money for the state can carry significant hidden costs—both human and financial—for individuals, for the government, and for the community at large. . . . [¶] Debt-related mandatory court appearances and probation and parole conditions leave debtors vulnerable for violations that result in a new form of

15

debtor's prison. . . . Aggressive collection tactics can disrupt employment, make it difficult to meet other obligations such as child support, and lead to financial insecurity—all of which can lead to recidivism.' [Citations.]" (*People v. Neal* (2018) 29 Cal.App.5th 820, 827.)

These additional, potentially devastating consequences suffered only by indigent persons in effect transform a funding mechanism for the courts into additional punishment for a criminal conviction for those unable to pay. Under the *Griffin-Antazo-Bearden* analysis, the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are thus fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution.[4]

---

[4] While we consider the issue one of due process because it concerns the fairness of relations between the criminal defendant and the state (see *Bearden*, *supra*, 461 U.S. at p. 665), we acknowledge that the case law in this area historically has drawn on both due process and equal protection principles. (See, e.g., *ibid.* ["Due process and equal protection principles converge" when analyzing the constitutionality of imposing financial burdens upon indigent criminal defendants]; *Ross v. Moffitt* (1974) 417 U.S. 600, 608-609 [cases draw support from both due process and equal protection clauses of the 14th Amend.]; *In re Sanders* (1999) 21 Cal.4th 697, 715 [due process and equal protection both require the state to provide appellate counsel to indigent defendants when the state provides a first appeal as of right].) The California Supreme Court recently characterized *Griffin*, *supra*, 351 U.S. 12, as an equal protection decision, and concluded that on equal protection grounds an indigent criminal

(U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)  These fees, assessed as part of a larger statutory scheme to raise revenue to fund court operations, should be treated no differently than their civil counterparts enacted in the same legislation and imposed only on those with the means to pay them.  (See *Jameson v. Desta*, *supra*, 5 Cal.5th 594, 622 ["[U]nder California law, when a litigant in a judicial proceeding has qualified for in forma pauperis status, a court may not consign the indigent litigant to a costly . . . procedure that the litigant cannot afford and that effectively negates the purpose and benefit of in forma pauperis status"].)[5]

II. The Execution of the Restitution Fine Must Be Stayed

California law provides for two types of restitution:  direct restitution to the victim (Pen. Code, § 1202.4, subd. (f)), which is based on a direct victim's loss, and a restitution fine (Pen. Code, § 1202.4, subd. (b)), which is not.  Payment of direct victim

---

defendant facing retrial is presumptively entitled to a full and complete trial transcript.  (*People v. Reese* (2017) 2 Cal.5th 660, 664-668.)

[5]  In *Jameson v. Desta*, *supra*, 5 Cal.5th at page 599, the California Supreme Court ruled that the practice of denying court reporters to indigent civil litigants with a fee waiver violates in forma pauperis decisional law and the public policy of equal access to the courts as articulated in Government Code section 68630, subdivision (a).  The Supreme Court observed that courts "have the inherent discretion to facilitate an indigent civil litigant's equal access to the judicial process even when the relevant statutory provisions that impose fees or other expenses do not themselves contain an exception for needy litigants."  (*Id.* at p. 605.)

restitution goes directly to victims and compensates them for economic losses they have suffered because of the defendant's crime. (*People v. Giordano* (2007) 42 Cal.4th 644, 651-652.) Direct victim restitution was not ordered and is not at issue in this case.

Here, the trial court imposed a restitution fine on Dueñas. Restitution fines are set at the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute. (Pen. Code, § 1202.4, subd. (b).) At all times relevant to this matter, the minimum restitution fine for a misdemeanor was $150 and the maximum restitution fine was $1000. (*Ibid.*) Restitution fines are not paid to the victim of the crime. Instead, they are paid into a statewide victim compensation fund. (Pen. Code, § 1202.4, subd. (e).)

Unlike the assessments discussed above, the restitution fine is intended to be, and is recognized as, additional punishment for a crime. (*People v. Hanson* (2000) 23 Cal.4th 355, 363.) When imposed on a probationer, restitution fines are conditions of probation. (Pen. Code, § 1202.4, subd. (m).) Any unpaid restitution fines remaining at the end of the probationary term are enforceable as a civil judgment. (Pen. Code, § 1202.43; *People v. Willie* (2005) 133 Cal.App.4th 43, 47-48.) A restitution fine is a debt of the defendant to the state that may be enforced by litigation or by offset against nearly any amount owed to the defendant by a state agency, including tax refunds. (Pen. Code, § 1202.43, subd. (b); Gov. Code, §§ 12418, 12419.5.)

"The principle that a punitive award must be considered in light of the defendant's financial condition is ancient." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 113.) The Magna Carta prohibited civil sanctions that were disproportionate to the

offense or that would deprive the wrongdoer of his means of livelihood. (*Ibid.*) Yet, although Penal Code section 1202.4 permits the court to waive imposition of a restitution fine if it finds "compelling and extraordinary reasons" why the fine should not be imposed, the statute expressly states that inability to pay the fine does not qualify:[6] "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (Pen. Code, § 1202.4, subd. (c).) This provision is at odds with the policy articulated in Penal Code section 1203.2, subdivision (a): "Restitution shall be consistent with a person's ability to pay."[7]

As a result of Penal Code section 1202.4, subdivision (c)'s prohibition on considering the defendant's ability to pay the minimum fine, the criminal justice system punishes indigent defendants in a way that it does not punish wealthy defendants. In most cases, a defendant who has successfully fulfilled the conditions of probation for the entire period of probation has an

---

[6]     Under this statutory scheme, a trial court may only consider a defendant's ability to pay if the court is considering imposing a restitution fine in excess of the statutory minimum amount. (Pen. Code, § 1202.4, subd. (d).)

[7]     Penal Code section 1203.2, concerning probation revocation, was amended in 1983 when the California Legislature codified the decision in *Bearden*, *supra*, 461 U.S. 660. (Stats. 1983, ch. 568, § 2.5; *People v. Cookson* (1991) 54 Cal.3d 1091, 1096.) The Legislature did not just align California law with the *Bearden* holding that probation cannot be revoked on the basis of non-payment if the probationer is unable to pay; it also went further by declaring that restitution shall be consistent with a person's ability to pay. (Stats. 1983, ch. 568, § 2.5; Pen. Code, § 1203.2, subd. (a).)

absolute statutory right to have the charges against him or her dismissed.  (Pen. Code, § 1203.4, subd. (a)(1).)  The defendant must be "released from all penalties and disabilities resulting from the offense with which he or she has been convicted," with the exception of driver's license revocation proceedings.  (*Ibid*.; Veh. Code, § 13555.)  But if a probationer cannot afford the mandatory restitution fine, through no fault of his or her own he or she is categorically barred from earning the right to have his or her charges dropped and to relief from the penalties and disabilities of the offense for which he or she has been on probation, no matter how completely he or she complies with every other condition of his or her probation.  Instead, the indigent probationer must appeal to the discretion of the trial court and must persuade the court that dismissal of the charges and relief from the penalties of the offense is in the interest of justice.  (Pen. Code, § 1203.4, subd. (a)(1).)

In this statutory scheme, therefore, the wealthy defendant is offered an ultimate outcome that the indigent one will never be able to obtain—the successful completion of all the terms of probation and the resultant absolute right to relief from the conviction, charges, penalties, and disabilities of the offense.  At best, indigent defendants who cannot pay their restitution fine can try to persuade a trial court to exercise its discretion to grant them relief, despite their failure to comply with all terms of probation; at worst, they are deprived of relief, with all the collateral consequences that the legislation was designed to avoid.  This result arises solely and exclusively from their poverty.

The statutory scheme thus results in a limitation of rights to those who are unable to pay.  The heart of the due process

inquiry is whether it is "fundamentally unfair" to use the criminal justice system to impose punitive burdens on probationers who have "made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of [their] own . . . ." (*Bearden*, *supra*, 461 U.S. at p. 668.) Penal Code section 1203.4 is not a substitute for due process.[8]

The People minimize the difference between expungement as of right and upon discretion in the interest of justice, asserting that Dueñas "fails to explain why this discretionary relief would

---

[8] Amicus Curiae Los Angeles County Public Defender argues that imposing a restitution fine without evaluating the defendant's ability to pay also violates the bans on excessive fines in the United States and California Constitutions. The due process and excessive fines analyses are sufficiently similar that the California Supreme Court has observed that "[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) In the excessive fine context, the exercise of state power to impose penalties must be "procedurally fair and reasonably related to a proper legislative goal." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398.) When deciding if fines are constitutionally disproportionate under the excessive fines clause, one of the four criteria is the defendant's ability to pay. (*Reynolds*, at p. 728.) A minimum restitution fine that is imposed with a prohibition on considering a primary criterion in ensuring constitutionally appropriate fines is neither procedurally fair nor reasonably related to any proper legislative goal. Imposing a restitution fine on "someone who through no fault of his own is unable to make restitution will not make restitution suddenly forthcoming" (*Bearden*, *supra*, 461 U.S. at pp. 670-671), and the state has no "legitimate interest in building inescapable debt traps" for indigent residents. (*Thomas v. Haslam*, *supra*, 329 F.Supp.3d at p. 521.)

be denied to those who demonstrate an inability to pay in their expungement applications." But given that restitution is a condition of probation, and the restitution statute instructs the trial court that a defendant's inability to pay is an illegitimate consideration in imposing the minimum restitution fine, it is not at all clear that a trial court would treat inability to pay as a legitimate consideration in determining whether it is in the interest of justice to relieve a non-paying defendant from the charges and penalties of his or her offense.[9] Indeed, the superior court appellate division observed in this case that the "denial of discretionary expungement" was one of the many "negative consequences" that "[c]ertainly . . . can flow from a defendant's failure to pay [the] mandatory fine and fees." (*People v. Dueñas* (Sept. 1, 2017, BR052831) [nonpub. opn.], p. 7.)

We acknowledge, as do the parties, that the Vehicle Code section Dueñas violated makes her ineligible for mandatory relief upon her completion of probation. This does not change our conclusion, however, because the trial court here indicated that it would neither consider Dueñas's inability to pay the restitution fine nor relieve her of it at the close of probation, stating that "[i]f *in the end* you're not able to pay," the fine and fees "will go to collections *without any further order from this court*." (Italics added.)

We interpret statutes to avoid serious constitutional questions when such interpretations are fairly possible. (*People v. Buza* (2018) 4 Cal.5th 658, 682; *People v. Gutierrez* (2014) 58

---

**9** Some courts might even consider it an abuse of discretion to relieve a party of the obligation to pay a fine on the basis of a factor expressly excluded from consideration in imposing that fine.

22

Cal.4th 1354, 1373-1374.) Accordingly, we hold that although the trial court is required by Penal Code section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine. We invite the Legislature to consider whether the statute should be amended to direct a trial court to consider the defendant's ability to pay in imposing the fine.[10]

---

[10] Although a number of courts have ruled or stated that a trial court lacks the statutory authority to stay an assessment, a fee, and a restitution fine (see, e.g., *People v. Sweeney* (2014) 228 Cal.App.4th 142, 154-155; *People v. Woods* (2010) 191 Cal.App.4th 269, 272); that assessments and fees are statutorily mandated (*People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543, fn. 2;); or that imposing a restitution fine without consideration of ability to pay does not violate the equal protection clause (*People v. Glenn* (1985) 164 Cal.App.3d 736, 739-740), none of these cases presented a due process challenge to Penal Code section 1202.4 based on the statute's preclusion of considering a defendant's inability to pay the minimum restitution fine amount. To the extent that *People v. Long* (1985) 164 Cal.App.3d 820 remains viable despite its reliance on multiple statutes that have since been amended, we respectfully disagree with its due process analysis.

## DISPOSITION

We reverse the order imposing assessments under Government Code section 70373 and Penal Code section 1465.8. We remand the case to the trial court with directions to stay the execution of the Penal Code section 1202.4 restitution fine unless and until the People prove that Dueñas has the present ability to pay it.

ZELON, Acting P. J.

We concur:

SEGAL, J.

WILEY, J.*

---

*     Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.