Filed 12/3/24  P. v. Ramirez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOEL RAMIREZ,<br><br>    Defendant and Appellant. | G064307<br><br>(Super. Ct. No. INF2202355)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Renee Navarro, Judge. Reversed in part and affirmed in part.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

A jury found defendant Joel Ramirez guilty of attempted manslaughter (count one) and assault with a deadly weapon (count two). It found true a great bodily injury enhancement for both counts and a dangerous weapon enhancement for count one. The trial court sentenced Ramirez to a total of nine years and six months in prison. This sentence included the upper term of five years and six months for count one, one year consecutive for the related deadly weapon enhancement, and three years consecutive for the great bodily injury enhancement tied to count one. The court stayed the sentences for count two and the related enhancement, and it imposed a $300 restitution fine and a $300 parole revocation fine.

Ramirez challenges his sentence on appeal. First, he argues the trial court erred by failing to dismiss any enhancements under Penal Code section 1385, subdivision (c)(2)(B).[1] Second, he contends the trial court improperly imposed the upper term instead of the middle term on count one. Finally, he asserts the court should have stayed his fines under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We reject his first argument but agree with his second one. The court improperly used the same facts to impose both the upper term and the enhancements, which is proscribed by section 1170, subdivision (b)(5). Thus, we reverse the imposed sentence and remand this matter to the lower court for resentencing as directed. Since Ramirez did not request during sentencing that his fines be stayed under *Dueñas*, he may raise this argument during resentencing. The remainder of the judgment is affirmed.

---

[1] All further undesignated statutory references are to the Penal Code.

2

## FACTS AND PROCEDURAL HISTORY

Ramirez was arrested for stabbing another man in a homeless encampment. In April 2023, a jury convicted him on count one (attempted manslaughter under §§ 192, subd. (a), 664), and count two (assault with a deadly weapon under § 245, subd. (a)(1)). As to count one, the jury found true that Ramirez had personally used a deadly and dangerous weapon (a knife). (§ 12022, subd. (b)(1).) For both counts, the jury found true that Ramirez had inflicted great bodily injury on the victim. (§ 12022.7, subd. (a).)

A jury trial on the aggravating factors and an alleged prior strike was held a few days later. As to the aggravating factors, the jury found Ramirez's commission of both counts "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1); hereafter, rule 4.421.) For count one, the jury found true that Ramirez was armed with and used a weapon (a knife) during the commission of the offense. (Rule 4.421(a)(2).) It found the prior strike allegations to be untrue.

A sentencing hearing was held in June 2023. At the beginning of the hearing, the trial court stated its intended sentence was nine years and six months in prison. This sentence was comprised of the upper term of five years and six months for count one, three years consecutive for the related great bodily injury enhancement, and one year consecutive for the deadly weapon enhancement. For count two, the intended sentence included three years concurrent plus another three years for the related great bodily injury enhancement, but both punishments would be stayed under section 654.

The trial court stated it was "acutely aware of its sentencing duty to impose a sentence not to exceed the middle term" for count one. However, it noted the upper term can be imposed "when there are circumstances in

3

aggravation of the crime that justify" its imposition and a jury has found the facts underlying those circumstances to be true beyond a reasonable doubt. The court believed the upper term for count one was warranted due to "the jury's finding that [Ramirez] personally used a deadly or dangerous weapon in the commission of the offense . . . and the defendant inflicted great bodily injury on the victim . . . , together with the evidence, testimony of the witnesses, and the totality of the circumstances attending the commission of the crimes . . . ."

After hearing the intended sentence, Ramirez argued the trial court should select the middle term for count one and stay the punishment for the related great bodily injury enhancement. He claimed selecting the upper term would result in double punishment because the jury's finding that the crime involved great violence had also been the basis for the great bodily injury enhancement. Likewise, the court could not rely on his use of a deadly weapon as an aggravating factor because this finding was already the basis for the deadly weapon enhancement.

The prosecution countered that selecting the upper term did not constitute double punishment because Ramirez "could have attempted a voluntary manslaughter without inflicting great bodily injury, but he didn't." It also asserted there were other aggravating factors cited in the probation report, such as Ramirez's lengthy rap sheet that showed his crimes were increasing in number and seriousness.

Following argument, the trial court imposed the intended sentence. It explained the upper term was appropriate because "[t]he crime involved great violence, bodily injury, and the defendant was armed with a weapon at the time of the commission of the offense." The court also stated it had considered Ramirez's "criminal history . . . and the prior record thereof

4

indicat[ed] patterns of regular increasingly serious criminal conduct, and his [unsatisfactory] performance while on probation or on parole."

The trial court imposed a restitution fine of $300 (§ 1202.4) and a parole revocation fine of $300 (§ 1202.45). Ramirez requested that these fines be waived because he was indigent. The court responded it would "ordinarily . . . be inclined to do so," but the restitution and parole revocation fines could not be waived. Thus, it denied the request.

On appeal, Ramirez argues the trial court erred by (1) failing to dismiss all but one enhancement under section 1385, subdivision (c)(2)(B); (2) imposing the upper term; and (3) failing to stay his fines under *Dueñas*, *supra*, 30 Cal.App.5th 1157.

## DISCUSSION

## I.

### DISMISSAL OF THE ENHANCEMENTS

Primarily, Ramirez contends the trial court was required to dismiss all but one enhancement under section 1385, subdivision (c)(2)(B). In the alternative, Ramirez asserts we should reverse and remand for resentencing because the court was unaware it had discretion to dismiss enhancements under this subdivision. We disagree with both contentions.

Section 1385, subdivision (c)(1), provides, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." Subdivision (c)(2) then explains that in exercising this discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present [(the mitigating circumstances)]. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public

safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

The mitigating circumstance at issue is found in section 1385, subdivision (c)(2)(B). This subdivision states that when "[m]ultiple enhancements are alleged in a single case. [A]ll enhancements beyond a single enhancement *shall* be dismissed." (§ 1385, subd. (c)(2)(B), italics added.) Multiple enhancements were imposed here. Based on the subdivision's use of the word "shall," Ramirez argues the trial court was required to dismiss all enhancements except for one. However, "this argument has been rejected by every court that has considered it." (*People v. Cota* (2023) 97 Cal.App.5th 318, 335.) Indeed, Ramirez acknowledges this argument has been rejected in at least six published opinions, and he has not identified any opinion that has ruled differently. (Citing *People v. Anderson* (2023) 88 Cal.App.5th 233, 238–241, review granted Apr. 19, 2023, S278786; *People v. Renteria* (2023) 96 Cal.App.5th 1276; *People v. Mazur* (2023) 97 Cal.App.5th 438, 445–446; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–297; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396–398, affirmed by *People v. Walker* (2024) 16 Cal.5th 1024.)

Like our sister courts, we also reject Ramirez's interpretation of section 1385, subdivision (c)(2)(B). "'[T]he statement that a court "shall" dismiss [the] enhancements appears as a subpart to the general provision that a "court shall dismiss an enhancement *if* it is in the furtherance of justice to do so." [Citation.] In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice.'" (*People v. Cota, supra*, 97 Cal.App.5th at p. 336.) "'The dismissal *shall* occur

6

but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety. [I]f we were to read subdivision (c)(2)(B) . . . as mandatory, then the existence of those factors "would not 'weigh greatly' in favor of dismissal—it would weigh *dispositively*."'" (*Ibid.*) Further, interpreting these subdivisions "as mandatory would give 'no effect to the clause "unless the court finds that dismissal of the enhancement would endanger public safety."'" (*Id.* at p. 337.)

In the alternative, Ramirez claims nothing in the record shows the trial court understood it had discretion to dismiss some of the enhancements under section 1385, subdivision (c)(2)(B). The court did not discuss any of the mitigating circumstances during sentencing, nor were they discussed in the sentencing briefs or the probation report. Thus, Ramirez believes the court was unaware it could dismiss enhancements under section 1385, subdivision (c)(2)(B), and he asks us to remand this case so the court can consider this issue.

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) But "remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record." (*Id.* at pp. 1228–1229.)

7

Further, "'[t]he trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary' [citation]. When, as here, the record is silent as to the trial court's reasons for declining to strike [an enhancement], we presume that the trial court "'correctly applied the law.'"" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637; *People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law'"].)

Here, the record is silent as to whether the trial court considered section 1385, subdivision (c)(2)(B), during sentencing. We cannot presume error from this silence. Instead, we must presume the court correctly applied the law and found dismissing any of the enhancements was either not "in the furtherance of justice" or would "endanger public safety." (See § 1385, subd. (c)(1), (2); *People v. Brugman, supra,* 62 Cal.App.5th at p. 637; *People v. Brown¸ supra,* 147 Cal.App.4th at pp. 1228–1229.)

We have not been cited any persuasive evidence that overcomes the presumption of correctness. Ramirez argues the trial court (1) was aware that multiple enhancements were alleged in a single case, and (2) addressed other mitigating and aggravating factors on the record unrelated to section 1385. However, the mitigating and aggravating factors discussed by the court were those raised in the prosecution's sentencing brief.[2] We can infer the

_____

[2] The prosecution argued that "[t]he maximum statutory exposure given [Ramirez's] conviction in this case is 9 years and 6 months in prison. Given [Ramirez's] extensive criminal history and the egregious facts in the instant case, the People request that the defendant be sentenced to 9 years and 6 months in state prison."

court expressly addressed these factors because they were raised by the parties. The court could have reasonably decided not to expressly address any of the mitigating circumstances in section 1385, subdivision (c), since neither party asked it to do so. As set forth above, trial courts are not required to state their reasons for failing to dismiss an enhancement under section 1385. (*People v. Brugman*, *supra*, 62 Cal.App.5th at p. 637.)

We are also unpersuaded by Ramirez's citation to *People v. Panozo* (2021) 59 Cal.App.5th 825 (*Panozo*). In *Panozo*, the defendant was convicted for multiple crimes arising from violent acts he had committed against his ex-girlfriend. (*Id.* at pp. 828–829.) He filed a sentencing memorandum claiming posttraumatic stress disorder (PTSD) from serving as a Marine in Iraq, and he asked the trial court to grant him probation and allow him to enroll in Veteran's Court. (*Id.* at p. 829.) During sentencing, the court discussed the defendant's service and its effect on his mental health. (*Id.* at pp. 830–831.) But following argument, the court found the defendant was presumptively ineligible for probation, and it found the aggravating circumstances outweighed the mitigating ones. It denied the defendant's request for probation and imposed a three-year prison sentence. (*Id.* at p. 831.)

On appeal, the defendant argued the trial court had been unaware of its discretion under sections 1170.9 and 1170.91, which obligate courts to consider certain service-related conditions as mitigating circumstances during sentencing. (*Panozo*, *supra*, 59 Cal.App.5th at pp. 831–832.) The appellate court agreed. It found the record was "ambiguous" as to whether the trial court was aware of its obligations under sections 1170.9 and 1170.91. (*Id.* at p. 837.) Among other things, the trial court was required under section 1170.9, subdivision (a), to make an eligibility determination as

9

to whether the defendant had a qualifying service-related condition. But "[f]aced with uncontested evidence that [the defendant] had served as a combat veteran in Iraq and attributed his criminal behavior to service-related PTSD and substance abuse, the [trial] court made no [such] eligibility determination . . . ." (*Id.* at p. 838.) Moreover, in discussing the mitigating factors at sentencing, the court failed to mention the defendant's service-related PTSD. (*Ibid.*)

The statutes at issue in *Panozo* are distinguishable from the statute at issue here. Significantly, as noted in *Panozo*, section 1170.9, subdivision (a), obligated the trial court to make an affirmative finding as to whether the defendant was suffering from service-related PTSD.[3] (*Panozo, supra,* 59 Cal.App.5th at p. 838; § 1170.9, subd. (a).) The court in *Panozo* did not make this determination despite the uncontested evidence introduced at the hearing concerning the defendant's military service and his PTSD. (*Id.* at pp. 838–839.) Because the court failed to make this required finding, the record was "ambiguous" as to whether the lower court had understood its sentencing discretion under sections 1170.9 and 1170.91. (*Id.* at pp. 837–839.) Remand is appropriate "*where the record is not silent*, but rather is 'at the very least ambiguous as to whether the court understood'" its sentencing discretion. (*Id.* at p. 839, italics added.)

---

[3] "In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that the person committed the offense as a result of . . . post-traumatic stress disorder . . . stemming from service in the United States military, *the court shall, prior to sentencing, make a determination* as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from . . . post-traumatic stress disorder . . . as a result of the person's service." (§ 1170.9, subd. (a), italics added.)

Unlike *Panozo*, the record is not ambiguous here. It is silent. In contrast to section 1170.9, subdivision (a), nothing in the section 1385 required the trial court to make an affirmative finding when declining to exercise its discretion to dismiss an enhancement. (*People v. Brugman*, *supra*, 62 Cal.App.5th at p. 637.) Rather, section 1385, subdivision (c)(2), only requires the court to "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances." There is no evidence in the record that reasonably suggests the court failed to engage in this analysis. Thus, we must presume the court correctly applied the law. (*Brugman*, at p. 637; *People v. Thomas*, *supra*, 52 Cal.4th at p. 361.)

For similar reasons, we reject Ramirez's argument that the trial court violated his due process rights by failing to determine whether dismissal of all but one of the enhancements would endanger public safety. Given the silent record, we cannot presume the court's failure to dismiss any of the enhancements was the result of error. Further, the court could have chosen not to dismiss any of the enhancements without making a public safety finding. As our Supreme Court has explained, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029.) Even if the court did not find Ramirez posed a threat to public safety, it could still conclude dismissal of the enhancements was not in furtherance of justice. (*Ibid.*) Since there is no evidence the court failed to make either of these findings, we must presume its ruling is correct.

## II.

### THE UPPER TERM

Under section 1170, subdivision (b)(1) and (2), the trial court shall impose the middle term unless there are aggravating circumstances that justify imposing the upper term. The facts underlying the aggravating circumstances must either be stipulated to by the defendant or be found true beyond a reasonable doubt at trial by the jury or the judge. (§ 1170, subd. (b)(2).) Ramirez contends the court erred by imposing the upper term instead of the middle term for count one. We agree.

The trial court considered several aggravating factors when imposing the upper term: (1) the crime involved great bodily injury and great violence (rule 4.421(a)(1)); (2) Ramirez was armed with a weapon (rule 4.421(a)(2)); (3) Ramirez criminal history showed a pattern of increasingly serious criminal conduct (rule 4.421(b)(2)); and (4) Ramirez unsatisfactory performance on probation or parole (rule 4.421(b)(5)).

As to the first and second factors, Ramirez argues they are based on the same facts as the deadly weapon and great bodily injury enhancements. Consequently, they cannot be used as aggravating factors to impose the upper term. For the third and fourth factors, Ramirez argues the trail court improperly relied on the probation report in making these findings. He contends the court could only make these findings after reviewing a certified record of conviction under section 1170, subdivision (b)(3).

We start with the first and second factors. "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).) "[A] fact charged and found as an enhancement may be used as a reason for

imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so." (Rule 4.420(g).)

Here, in imposing the upper term, the trial court stated it was relying on "the jury's finding that [Ramirez] personally used a deadly or dangerous weapon in the commission of [count one] of which he was found guilty, and [Ramirez] inflicted great bodily injury on the victim . . . ." Specifically, as to the aggravating factors, the jury found the commission of count one "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." It also found that Ramirez "was armed with and used a weapon, to wit, a knife during the commission of" count one.

The jury made separate findings as to the enhancements. For the great bodily injury enhancement tied to count one, the jury found Ramirez had "personally inflicted great bodily injury" on the victim. As to the dangerous weapon enhancement, it found that in committing count one, Ramirez had "personally used a deadly and dangerous weapon, to wit, a knife."

The Attorney General's office concedes the dangerous weapon aggravating factor improperly relied on the same facts as the dangerous weapon enhancement. Both arise from the factual finding that Ramirez used a weapon in the commission of the offense. But the Attorney General's office contends the other aggravating factor did not necessarily rely on the same facts as the great bodily injury enhancement. It notes that the jury found true as an aggravating factor that the relevant crime "involved great violence, great bodily harm, threat of great bodily harm, *or other acts disclosing a high degree of cruelty, viciousness, or callousness.*" (Italics added.) Thus, Ramirez argues the trial court could have imposed the upper

13

term because he acted with a high degree of cruelty, viciousness, or callousness. This would be a different factual basis than the great bodily injury enhancement, which arose from the fact that Ramirez "personally inflicted great bodily injury" on the victim.

Ramirez's argument is belied by the record. The trial court explained twice why it was imposing the upper term. First, before hearing argument, the court stated it intended to impose the upper term based on the jury's finding that Ramirez used a deadly weapon and "inflicted great bodily injury on the victim." Second, after hearing argument, the court explained it was imposing the upper term because "[t]he crime involved great violence, bodily injury, and the defendant was armed with a weapon . . . ." In short, the court expressly stated it was imposing the upper term because Ramirez inflicted great bodily injury on the victim and not because he acted with a high degree of cruelty, viciousness, or callousness.

Further, the prosecution did not argue that Ramirez acted with a high degree of cruelty, viciousness, or callousness. Rather, it asserted Ramirez "did use great violence and did inflict great bodily injury." Thus, based on the record, there is no reasonable basis to conclude the trial court imposed the upper term because Ramirez acted with a high degree of cruelty, viciousness, or callousness. Rather, the court imposed the upper term, at least in part, because Ramirez caused great bodily injury while committing count one. This was same factual basis as the great bodily injury enhancement. Thus, the court erred by considering this aggravating factor in imposing the upper term. (§ 1170, subd. (b)(5).)

Given the above errors, we need not review Ramirez's remaining arguments. Even if we found no error as to the third and fourth factors, it is unclear whether the trial court would have imposed the upper term based

14

solely on their presence. It did not assign any weight to the various aggravating factors. Nor did it state whether imposing the upper term was a close call. It only listed the four factors, said it had taken them all into consideration, and then imposed the upper term. Given the record, we cannot determine whether the court would have imposed the upper term based solely on the third and fourth aggravating factors. As such, we must reverse and remand the matter for resentencing. (See, e.g., *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1114–1115, disapproved of on other grounds by *People v. Lynch* (2024) 16 Cal.5th 730, 777 [reversing and remanding after finding the court had improperly considered four of eight aggravating factors].)

## III.

## FINES

Finally, Ramirez argues the trial court was unaware it had discretion to stay the $300 restitution fine and $300 parole revocation fine under *Dueñas*, *supra*, 30 Cal.App.5th 1157. He asks that we direct the lower court to stay the fines. The Attorney General's office takes a different position. It argues we should remand the case and direct the court to conduct a hearing as to whether the fines are unconstitutionally excessive under the United States and/or California Constitutions.

Ramirez never argued his fines should be stayed under *Dueñas* during sentencing. Nor did he argue the fines were unconstitutionally excessive. Instead, without citing any authority, he asked the trial court to waive the fines due to his indigency. Since the court never had an

15

opportunity to address these arguments, Ramirez may raise them during resentencing.[4]

## DISPOSITION

Ramirez's sentence is reversed. The matter is remanded to the trial court for a full resentencing, consistent with section 1170, subdivision (b). During resentencing, Ramirez may challenge the imposition of the restitution fine and parole revocation fine and/or ask that they be stayed. The judgment is affirmed in all other respects.



MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

---

[4] Ramirez contends the trial court already found he was unable to pay the relevant fines. This is inaccurate. The court held no hearing on Ramirez's ability to pay. Rather, in responding to Ramirez's request to waive the fines, the court commented it would "[o]rdinarily . . . be inclined to do so" but could not because the fines were unwaivable. The court's comment suggests it may have believed Ramirez could not pay the fines, but its statement is not tantamount to a finding.

16