Filed 9/2/25  P. v. Folkes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHASE EDWARD FOLKES,<br><br>    Defendant and Appellant. | D084905<br><br><br>(Super. Ct. No. SCE412377) |


APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed and remanded with directions.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Chase Edward Folkes shot his mother dead.  A jury convicted Folkes of second degree murder (Pen. Code, § 187, subd. (a); count 1) and possession of a firearm by a felon (§ 29800(a)(1); count 2).  For count 1, the jury found Folkes intentionally and personally discharged a firearm and proximately caused death to another.  (§ 12022.53(d).)

Appointed appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 indicating she found no arguable issues for reversal on appeal.  Counsel asks us to review the record for error as *Wende* requires.  We offered Folkes the opportunity to file his own brief, but he has not done so.

Based on our independent review of the record, we find no reasonably arguable appellate issues.  We remand with directions to correct the abstract of judgment and otherwise affirm.

## I.

## A.

Folkes shot his mother, Carolyn Folkes, in May 2022.

The pair lived together.  Folkes, who had a decades-long criminal and drinking history, helped care for his elderly mother.  She had "some beginnings of dementia" and was "very forgetful."

The week he shot his mother, Folkes—who testified in his defense— was reportedly "drinking more."  As a result, he professed to not have a "good memory" of that week.  His sister testified that a "very desperate" sounding Folkes called her that week and told her their mother "was too much" and "he couldn't take her."

According to Folkes, the shooting was an accident.  He heard his mother say she "'wish[ed] somebody would shoot [her].'"  In response, Folkes took a "slam-fire shotgun" he had made—the barrel of which he knew contained a live shotgun shell—and sat across the kitchen table from his mother.  He told his mother "'you don't want to be shot by a gun.'"  Folkes claimed he "lost control of the barrel" and the gun "went off," shooting his mother.

A day or two later, Folkes called 911 and told the dispatcher to "bring the cops" and "a coroner."

At trial, a medical examiner testified Folkes' mother had an "entrance wound" from a firearm "in the middle, lower forehead between the eyebrows," indicating she was "directly facing the barrel [of the firearm] when it went off."

On the stand, Folkes admitted that, as a convicted felon, he was not allowed to purchase or possess firearms. He also conceded the slam-fire shotgun had a screw on the side that, if screwed in, prevented the device from accidentally firing. Folkes admitted he knew (1) firearms are dangerous, (2) never to point a gun at someone "unless you intend to shoot," and (3) it is important to check if a gun is loaded.

## B.

Shortly before reaching a verdict, the jurors sent a note asking if they could consider an exhibit they "came across" but did not recall being played during trial. Outside the jury's presence, the courtroom clerk testified that she accidentally took an exhibit that had not been admitted into evidence into the jury room. The clerk collected all the exhibits from counsel's table, which included a pile of transcripts with CDs on them. She assumed the at-issue exhibit was "not in the pile," but it was.

The exhibit was a CD and accompanying transcript of a voicemail Folkes left for his sister the week he shot his mother. The court noted it contained "a statement by Mr. Folkes that is favorable to the defense." So "[i]f anything, it's favorable to his position."

The court polled the jury about the exhibit. While the jurors could not play the CD, some had read the transcript before reaching a verdict. Each juror confirmed reading the transcript did not affect their vote on the verdict.

3

## C.

After the jury delivered its verdict, a bench trial followed. Folkes admitted to three serious felony priors and three strikes prior, and the court found true eight aggravating factors.

## D.

The court sentenced Folkes to prison for an indeterminate term of 70 years to life for count 1 and a determinate term of six years for count 2. It denied Folkes' request to strike his prior strikes and serious felony prior enhancements and to reduce his firearm enhancement after finding him a "danger to society." Even so, for purposes of sentencing, the court struck the serious felony prior enhancements for count 1 and found them inapplicable to count 2. The court also found "on balance that the factors in aggravation outweigh those in mitigation."

## II.

Folkes' counsel filed a *Wende* brief setting forth a statement of the case and facts, urging no grounds for reversal, and asking us to independently review the record for error. To assist our review under *Anders*, 386 U.S. at pp. 744-745, counsel identified the following issues she considered in evaluating the potential merits of this appeal:

(1) Whether the "failure to instruct on danger to human life/conscious disregard" consistent with *People v. Reyes* (2023) 14 Cal.5th 981 and CALCRIM No. 520 as modified in March 2024 was error;

(2) Whether the jury "looking at an exhibit that had not been admitted into evidence, but went into the jury room through inadvertence of the court clerk" was juror misconduct;

4

(3) Whether (a) the jury was properly instructed on accident (CALCRIM No. 510) and (b) "the seemingly conflicting arguments about lawful act versus negligence" resulted in prejudicial error; and

(4) Whether the court abused its discretion in sentencing Folkes.

We reviewed the entire record as required by *Wende* and *Anders* and discovered no arguable issues for reversal on appeal. Competent counsel has represented Folkes on this appeal.

We remand to correct the abstract of judgment, however, to be consistent with the controlling oral pronouncement. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188.) After imposing the restitution and parole revocation fines under sections 1204.4(b) and 1202.45, the court turned to other "fees and fines." The court stated it was "going to delete them under" *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168, yet the abstract of judgment imposes an $80 court security fee under section 1465.8 and a $60 criminal conviction assessment under Government Code section 70373.

### III.

We remand to the trial court to correct the abstract of judgment by striking the $80 court security fee under Penal Code section 1465.8 and the $60 criminal conviction assessment under Government Code section 70373. We direct the trial court to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment.

CASTILLO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.