Filed 6/25/21  P. v. Guidotti CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FREDERICK JACOB GUIDOTTI,<br><br>    Defendant and Appellant. | C087893<br><br>(Super. Ct. Nos. 18F038,<br>    16SR005) |

Sentenced to a state prison term following conviction by jury, defendant Frederick Jacob Guidotti contended in his original brief that he was entitled to reversal because the trial court erred in denying his motion for mistrial based on jury misconduct.  In subsequent supplemental briefs, he contends that he is entitled to a remand for a *Dueñas* hearing (*People v. Dueñas* (2019) 30 Cal.App.5th 1157) on the fines, fees, and assessments imposed by the trial court at sentencing, and that in light of the enactment of Senate Bill No. 136 (Stats. 2019, ch. 590, § 1 (2019-2020 Reg. Sess.), eff. Jan. 1, 2020), he is also entitled on remand to an order striking the one-year enhancement added to his

1

sentence for his prior felony conviction (Pen. Code, § 667.5, subd. (b)).[1]  Agreeing only with defendant's last point, we shall strike the enhancement and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In case No. 18F038, an amended information charged defendant with felony evading a police officer (Veh. Code, § 2800.2), and alleged that defendant had served a prior prison term (§ 667.5, subd. (b)) for obstructing or resisting a peace officer in performance of his duties (§ 69).

After trial, the jury convicted defendant on the charged offense and defendant admitted the prison prior.

The trial court sentenced defendant to an aggregate state prison term of four years, consisting of three years on the charged offense plus one year consecutive for the prior prison term.  Simultaneously, in case No. 16SR005, the court found defendant guilty of a violation of postrelease community supervision, reinstated that supervision, and ordered him to serve 180 days in custody concurrent with his sentence in the principal case.[2]

At trial, California Highway Patrol Officer Jesse Brookins testified as follows:

At around 3:25 p.m. on February 9, 2018, as he was patrolling in uniform on Lewiston Road, a two-lane road in Trinity County, in a marked patrol vehicle, he saw an eastbound green Dodge Caravan approaching his location.  As it passed roughly 10 feet from him at approximately 30 miles per hour, Officer Brookins could see that the driver was defendant, whom he recognized from 40 to 50 prior contacts over the last four or five years and whose license he believed to be suspended; the officer could also see through the Caravan's windshield and open driver-side window that defendant was not wearing a

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  This court granted defendant's motion for constructive notice of appeal to allow the appeal to encompass case No. 16SR005.

seatbelt. The officer saw defendant's face and his distinctive neck tattoos; although he was wearing a shirt, at least the tops of the tattoos were visible.

Officer Brookins made a U-turn and tried to overtake defendant's vehicle, activating his lights and siren. Defendant was evidently trying to flee: as he passed an elementary school, his speed, confirmed by the officer's radar unit, was 93 miles per hour. It was a weekday, and there was a good deal of traffic going in and out of the school at that time of day.

After leaving the school zone, defendant made several turns, finally reaching Third Avenue, where Officer Brookins lost sight of him. When the officer turned onto Third Avenue, he found the unoccupied Caravan parked in front of a house on the street, with its engine running; no one was nearby. Neighbors told the officer that defendant lived at or frequented that house. The officer did not find physical evidence that defendant had been in the Caravan.

The Caravan was registered to persons whose names Officer Brookins recalled as William S. and Judith S. According to a correctional officer who worked at Trinity County Jail, when defendant was booked into the jail on a later date in 2018, he gave the address where the Caravan was parked on the date of the incident as his residence and listed Judy S. and Leon S., who lived on Second Avenue, as his emergency contacts.

Defendant did not present evidence. His counsel argued mistaken identity to the jury, based on the supposed difficulty of seeing the driver of the Caravan clearly under the circumstances and the lack of evidence after Officer Brookins found the parked vehicle that defendant owned it or had been in it.

During deliberations, a juror alleged misconduct by fellow jurors, and defendant moved for a mistrial. After investigating the matter, the trial court denied the motion, finding no misconduct had occurred. We go into more detail on this episode in part I of the Discussion.

The jury subsequently requested and received a readback of Officer Brookins's testimony. Shortly after the readback, the jury returned its verdict.

DISCUSSION

I

Defendant contends his conviction must be reversed because the trial court erred by denying his motion for mistrial based on jury misconduct. We disagree.

*Background*

After deliberations began, the trial court stated: "[W]e received some information from the jurors that they took a break, and that during the break two jurors stayed in the jury room. One of the jurors left and then came back, and when she came back she overheard the two jurors talking about the case. She informed them they shouldn't be doing that. Supposedly they said okay, they'll stop, and then they're like something you're right. She then informed the bailiff who informed the Court, and she was asking that something be addressed regarding this conduct. [¶] So what we're going to do is have [defendant] brought down from the jail, we'll bring the jury up as a group, and then I'll explain to them we have information we have to look to, we'll have them sit in the jury room and we'll call—is it (JUROR NO. 76185) is the person complaining and the two individuals and then get the information on the record. The jury can still hang out in the jury room and library, and then we can decide what to do from there."

After a short recess, the trial court noted that the jury wanted a readback of Officer Brookins's testimony, which the court thought would take only five minutes. The court deferred ruling on that request until after the misconduct issue had been resolved.

4

When the jury returned to the courtroom, the trial court sent them to the library, except for Juror No. 76185. After hearing from that juror, the court called in the others directly implicated one at a time.[3]

Juror No. 76185 stated: "We were taking a break, and when I came back to the room there were probably three or four people, other jurors in the room, and the Jury Foreman, I could hear him talking about the case. I don't know to whom he was speaking, who overheard, but he was talking about—" When the trial court asked if the juror had heard what the foreman had to say, the juror said, "I don't recall." However, "[i]t was about the case, and it sounded like he and the other gentleman were agreeing on a point that had caused some disagreement during . . . our discussions." The juror added that she now believed the foreman was talking to Juror No. 78728.

The trial court then brought in Juror No. 76877, the foreman. Juror No. 76877 admitted: "Yeah, it slipped my mind, I was relaxed. I started to say a half a sentence about I can't believe that someone would park, you know, just kind of like thinking in my mind. Then she came in and said are you talking about the case? I said, yeah, I didn't think about it. And she goes well I need to tell the bailiff about it. Then I said okay, and that was it." Asked if there was any discussion with anyone else, Juror No. 76877 stated: "I got that much out of my mouth, and that was it." He added: "There were two jurors just sitting there, we were just all relaxed. . . . Juror 7 was setting [*sic*] next to me, (JUROR NO. 77921), so juror 7, I can't remember the other guy, what number he is, but yeah I was like we were sitting there talking about something else entirely, and then that just came out of my mouth like, it was just like oh, and she walked in the door as that happened, the three of us were sitting there. Well, I need to go tell the bailiff. I go okay." Asked if any discussion happened, he answered: "We stopped right there."

---

**3**    After each juror's statement, the trial court asked if the attorneys had questions. They did not.

Asked if Juror No. 77921 was also there, the foreman replied: "He was just sitting there. He didn't say a word." In addition, he recalled that Juror No. 78728 was there.

After the foreman, Juror No. 77921 was called in. Asked if he recalled what the foreman had said, he replied: "No, I wasn't really listening." He denied having discussions with any jurors during the break; when he got back from the break he was on his cell phone.

After Juror No. 77921, the trial court called in Juror No. 78728. Asked if he remembered any conversation during the break, he said: "[The foreman] keeps saying that he made the first comment, but I think I actually did. I made a comment that after our first session together it . . . you could see that there are opinions all over the board, and this is going to be . . . it's going to be difficult to get people to change their minds about the way they feel. I think that's the first comment I made. [¶] And then he started to respond, and that's when the lady came in and said oh, you guys aren't supposed to be ta[l]king about this. Oh, you're right, you're absolutely right, we shouldn't be because everybody was supposed to be in the room." Juror No. 78728 did not believe there was any discussion about the facts of the case or about how to try to decide the matter. The juror did not see any of the other jurors discussing anything.

After Juror No. 78728 had left the courtroom, defense counsel acknowledged it was "somewhat questionable" to what degree misconduct had occurred, but he felt obligated to move for mistrial. The prosecutor asserted it did not appear from what had been elicited that the jurors discussed the case on the break.

The trial court ruled: "And from what I gleaned from the jurors, [JUROR NO. 76185] overheard some conversation, didn't hear the conversation. [JUROR NO. 78728] actually says he began the conversation not as a deliberation, but just as an observation that it might be hard. I don't think that is misconduct to talk about observations, what is happening. They weren't talking about the facts of the case. They weren't deliberating on the matter, they weren't trying to make a decision. [JUROR NO.

6

77921] says he didn't even hear, he was on the phone.  And then [JUROR NO. 76877] said that he began to say something and then that's when [JUROR NO. 76185] came in and—and he had half a sentence out.  There was no discussion.  There was . . . there was no deliberations going on outside the presence of the other jurors.  But I don't think that what we've heard now rises to the level of juror misconduct, so I'm going to deny your request for mistrial."

*Analysis*

In analyzing claims of prejudicial juror misconduct, we first determine whether misconduct occurred.  (*People v. Collins* (2010) 49 Cal.4th 175, 242.)  It is misconduct for a juror to discuss the case outside of deliberations or to violate instructions, such as the instruction to refrain from discussing the case without all of the jurors present. (*People v. Weatherton* (2014) 59 Cal.4th 589, 599-600 (*Weatherton*); *People v. Linton* (2013) 56 Cal.4th 1146, 1194.)

If the defendant establishes that there was misconduct by a juror, prejudice is presumed and the People must rebut the presumption to avoid reversal.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1178.)  In considering this issue we accept the trial court's factual findings and credibility determinations if supported by substantial evidence.  (*People v. Majors* (1998) 18 Cal.4th 385, 424-425.)  However, we decide independently whether any misconduct was prejudicial, meaning whether there is a substantial likelihood one or more jurors were biased against the defendant.  (*Weatherton, supra*, 59 Cal.4th at p. 598.)

Here, even if misconduct technically occurred, it was de minimis and could not have prejudiced defendant.  Jurors who spoke about the deliberation process or the evidence when all jurors were not in the jury room should not have done so, as they immediately acknowledged when reprimanded by the complaining juror.  But, as the trial court found, there was no *discussion of the evidence*.  The complaining juror could not recall what the foreman was saying when she reentered the jury room, and her conclusion

that he and another juror were agreeing on a point of evidence was unsupported by her own recollection or by any other juror's statement. The evidence is undisputed that the only remark going to a fact in the case, the foreman's ambiguous and fragmentary statement "I can't believe someone would park," was unheard by any other juror—a point which defendant ignores when recounting this evidence. The statement by another juror that people's opinions seemed to be all over the place and it would be hard to change minds did not suggest any view of the evidence or the appropriate verdict. Thus, defendant's characterization of the jurors' remarks as "discussing the case" or as "persuading other jurors of their positions" is inapt.

But even assuming misconduct, defendant's claim of prejudice does not withstand scrutiny. He asserts correctly that identity, the only issue in the case, "was vigorously disputed." But he points to nothing that would have led a reasonable jury to doubt Officer Brookins's staunch identification of him as the culprit based on the officer's close-up visual observation of defendant, whose appearance he had long been familiar with, driving the Caravan, plus the fact that immediately after the chase the vehicle was found parked in front of the residence defendant claimed as his. And defendant does not even try to explain how the alleged jury misconduct gave rise to a reasonable possibility that one or more jurors were biased against him. (*Weatherton, supra*, 59 Cal.4th at p. 598.) Contrary to defendant's view, the trial court did not need to admonish the jurors to follow their instructions in the future, since the jurors who committed the alleged misconduct had already recognized their lapse.

Defendant asserts that the jurors' request for a readback of Officer Brookins's testimony shows the case was close and the evidence against him was "far from overwhelming." We are not persuaded. In *People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295, which defendant relies on, the evidence was complex and the witnesses numerous; the jury requested readbacks of five witnesses' testimony, as well as asking questions going to evidentiary points in conflict. Here, the matter was factually simple,

8

little if any evidence was in dispute, and the jury asked no evidentiary questions. The fact that the jury returned its verdict soon after it got the readback implies that the case was not close. *Pearch* is inapposite.

The trial court did not err by denying defendant's mistrial motion.

## II

At sentencing, the trial court imposed a $1,200 restitution fine (§ 1202.4, subd. (b)), a matching suspended parole revocation restitution fine (§ 1202.45), a $40 court operation fee (§ 1465.8), and a $30 criminal conviction fee (Gov. Code, § 70373). Defendant did not object to any of these fines and fees.

Defendant contends he is entitled to a remand for a *Dueñas* hearing on his ability to pay the fines and fees imposed. Numerous courts have rejected *Dueñas*. (*People v. Curry* (2021) 62 Cal.App.5th 314, 328; *People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060; *People v. Caceres* (2019) 39 Cal.App.5th 917, 920.) We do so as well.

## III

Defendant contends that, in light of the amendment to section 667.5, subdivision (b) enacted by Senate Bill No. 136, which restricts the one-year enhancement under that statute to sexual felonies, the sentence enhancement for his prior nonsexual felony must be stricken. The Attorney General agrees that the statute has retroactive effect and that defendant is entitled to the relief he seeks. We agree with the parties and strike the enhancement.

9

## DISPOSITION

The one-year enhancement to defendant's sentence imposed under section 667.5, subdivision (b) is stricken.  In all other respects, the judgment is affirmed.


                                           /s/
                                   BLEASE, Acting P. J.


I concur:


      /s/
HOCH, J.

ROBIE, J., Concurring and Dissenting.

I concur in all parts of the Discussion except the analysis in part II. Defendant believes *Dueñas* calls into question the imposition of the $1,200 Penal Code section 1202.4 restitution fine and matching suspended Penal Code section 1202.45 parole revocation restitution fine, a $40 Penal Code section 1465.8 assessment, and a $30 Government Code section 70373 assessment without a determination of his ability to pay. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157.) I conclude defendant forfeited his challenge to the restitution fines because our Supreme Court has already determined an objection necessary to challenge the imposition of the general restitution fine in excess of the mandatory minimum. (*People v. Nelson* (2011) 51 Cal.4th 198, 227.) As to the challenged assessments, I agree with *Dueñas* that principles of due process would preclude a trial court from imposing the assessments if the defendant demonstrates he or she is unable to pay them. (*Dueñas*, at p. 1168.) I do not find the analysis in *Hicks* to be well-founded or persuasive and believe the majority has it backwards -- it is *Hicks* that was wrongly decided, not *Dueñas*. (*People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946.)

Defendant has not forfeited the *Dueñas* argument relating to the assessments, as the People contend. I agree that, as stated in *Castellano*, a trial court is required to determine a defendant's ability to pay only if the defendant raises the issue, and the defendant bears the burden of proving an inability to pay. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.) In the absence of authority invalidating the challenged assessments on inability to pay at the time the trial court imposed them, however, defendant could not have reasonably been expected to challenge the trial court's imposition thereof. (*People v. Welch* (1993) 5 Cal.4th 228, 237 ["[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence"].)

1

I believe a limited remand under *Dueñas* is appropriate to permit a hearing on defendant's ability to pay the challenged assessments because his conviction and sentence are not yet final.  (See *People v. Castellano*, *supra*, 33 Cal.App.5th at pp. 490-491.)


                              /s/
                         ROBIE, J.


2