Filed 3/11/24  P. v. Patterson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDWARD ARTHUR PATTERSON,<br><br>    Defendant and Appellant. | D081455<br><br><br>(Super. Ct. No. SCE402368) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert Amador, Judge.  Affirmed as modified.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

Edward Arthur Patterson asserts two sentencing errors in this appeal. First, he contends his trial counsel rendered ineffective assistance of counsel by failing to ask the trial court at sentencing to dismiss an enhancement for personally inflicting great bodily injury on another person during the commission of a felony. (Pen. Code[1], § 12022.7, subd. (a).) Second, he contends the court erred when it stayed two financial assessments instead of striking them pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We reject the first contention, but we accept the Attorney General's concession that the second contention has merit. The judgment is therefore affirmed subject to the modifications detailed below.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Underlying Offense*

Patterson and a companion were observed on October 1, 2020 "making a mess" by setting up a canopy-style tent and dispersing their trash in the parking lot of an apartment complex in San Diego. The on-site manager of the complex and her daughter drove to the parking lot to ask the two men to leave.

While still in her car, the manager told the men to take their belongings with them as they were leaving. Patterson responded by punching the manager in the face and demanding that she give her car to him. The manager's nose broke and began to bleed profusely. The injury eventually required surgery because of pain and pressure headaches that continued for two years after the assault.

---

[1] All further undesignated statutory references are to the Penal Code.

The manager's daughter yelled and called 911. The manager's husband was outside on the other side of the apartment complex. He heard his daughter yelling, ran towards the car, and began approaching and yelling at Patterson.

Patterson pulled out a knife or a stick and began advancing while making a thrusting and jabbing motion with it. The manager's husband grabbed a broom handle to defend himself. Patterson backed away, placed his belongings in a shopping cart, and left the parking lot. The police officers who responded to the 911 call found Patterson nearby pushing a shopping cart and carrying a knife, and they arrested him.

## II.

### *Competency Proceedings and Conviction*

A psychiatrist evaluated Patterson and opined that he was incompetent to stand trial.[2] The psychiatrist reported that Patterson had previously been committed to Patton State Hospital for competency restoration in 2013 and again in 2017. During the evaluation, Patterson engaged in several instances of incoherent yelling and "[h]is thought content had apparent delusions, many paranoid in nature." The psychiatrist determined the "defendant suffers from mental illness, displaying active signs of mental illness including delusions and disorganized thinking." Patterson was ultimately diagnosed with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder," antisocial personality disorder, and drug and alcohol use disorders.

---

[2] Pursuant to section 1367, a finding of incompetence means that, "as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

Patterson was committed to the Department of State Hospitals subject to an involuntary medication order for more than a year, from March 2021 to June 2022.  After Patterson's competency was restored, a jury convicted him of one count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 1) with an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)), and one count of battery (§ 242; count 2).

### III.

### *Defense Counsel Fails to Invite Dismissal of the Great Bodily Injury Enhancement on the Ground That Patterson's Mental Illness Was Connected to the Offense*

In preparation for sentencing, defense counsel filed a brief that outlined Patterson's long history of mental illness.  Based on that history, as well as its asserted role in the offense, defense counsel asked the trial court to place Patterson on probation.  In the alternative, he asked the court to "impose the low term of [two] years" for the aggravated assault count.  The brief also asked the court to "consider staying the punishment for the enhancement for a violation of . . . section 12022.7."

The argument in the sentencing brief focused on counsel's request to select the lower term if Patterson were sentenced to prison.  One factor that can weigh in favor of imposing the lower term is, "[t]he defendant experienced psychological . . . trauma . . . and it was a factor in the commission of the crime."[3]  (Cal. Rules of Court, rules 4.423(b)(3), 4.420(d).)  Pointing to the incompetency evaluation, the brief accordingly asked the trial

---

[3]    Although not mentioned in the sentencing brief, another factor involving mental illness that can support selection of the lower term is, "[t]he defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime."  (Cal. Rules of Court, rule 4.423(b)(2).)

4

court to impose the lower term on the ground that "psychological trauma . . . played a significant role in the offense."

At sentencing, Patterson's counsel focused on his request in the alternative to be placed on probation. Because of his criminal history, Patterson was presumptively ineligible unless his case was an "unusual" one "in which the interests of justice would best be served if the person is granted probation." (§ 1203, subd. (e).) One unusual circumstance that can support a probation grant is, "[t]he crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation." (Cal. Rules of Court, rule 4.413(c)(2)(B).) Counsel for Patterson accordingly argued that probation should be granted for this reason: "I think the [c]ourt can note from Mr. Patterson's behavior throughout the trial that once he has the proper medication and treatment, I think the risk to the public is severely lessened. I think it would do him and the public well to have him supervised by [p]robation's mental health unit."

In addition to providing support for a grant of probation and imposition of a lower term, a relationship between a defendant's mental illness and his offense can support the dismissal of an enhancement. In particular, pursuant to section 1385, if a defendant's offense is "connected to mental illness," that circumstance "weighs greatly in favor of dismissing the enhancement." (§ 1385, subd. (c)(2)(D).) Nevertheless, at no point did counsel explicitly invite the trial court to dismiss the enhancement. Nor did he cite to section 1385 at any time during the sentencing proceedings.

5

## IV.
### *The Trial Court Imposes the Great Bodily Injury Enhancement and "Stays" Several Financial Assessments*

At sentencing, the trial court denied probation after a detailed discussion of its assessment of the criteria set forth in California Rules of Court, rule 4.414. In favor of granting probation, the court found that Patterson did "appear willing to comply with the terms of probation." But weighing against a grant, the court found that Patterson had "inflicted physical and emotional injury," had "a prior significant record of criminal conduct," had "unsatisfactory" performance under PRCS (postrelease community supervision), appeared "to be without remorse," "[did] not have the ability to comply with the reasonable terms of probation as indicated by his mental health problems, substance abuse history, lack of [family] ties" and employment history. The court made an express finding that Patterson possessed a knife during the offense. The court also found "it is likely [Patterson] will be a danger to others if not in prison."

Following the recommendation of the prosecution and the San Diego Probation Department, the court imposed a state prison term of six years, consisting of the middle term of three years for the aggravated assault conviction plus three years for the great bodily injury enhancement. The court also sentenced Patterson to six months in local custody for the battery count but stayed that sentence pursuant to section 654.

In its statement of reasons, the trial court discussed the factors supporting its selection of the lower term. The court took judicial notice of Patterson's prior prison term and performance on PRCS. The court also "note[d] that [Patterson] has engaged in violent conduct."

6

Finally, the trial court imposed two standard financial assessments but stayed them for inability to pay pursuant to *Dueñas*, *supra*, 30 Cal.App.5th 1157.

## DISCUSSION

## I.

### *No Ineffective Assistance of Counsel*

On appeal, Patterson contends his trial counsel rendered ineffective assistance of counsel by failing to invite the trial court to dismiss the great bodily injury enhancement based on the mitigating circumstance set forth in section 1385 that Patterson's offense was "connected to mental illness." (§ 1385, subd. (c)(2)(D).) We observe no prejudicial error.

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) amended section 1385 to provide that the presence of one of nine enumerated mitigating circumstances "weighs greatly in favor of dismissing the enhancement . . . unless the court finds that dismissal of the enhancement would endanger public safety." (Stats. 2021, ch. 721, § 1; see § 1385, subd. (c)(2).) One of the listed mitigating circumstances is that "[t]he current offense is connected to mental illness." (§ 1385, subd. (c)(2)(D).) The statute provides that "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Significantly, the trial court has no sua sponte duty to consider striking an enhancement nor to muster and consider evidence not presented in an invitation by the defendant. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–376; *People v. Lee* (2008) 161 Cal.App.4th 124, 129–130.)

In accordance with this authority, Patterson asserts that no reasonable attorney would ask the trial court to grant probation or impose the lower term based on a relationship between a defendant's mental illness and the offense, as counsel did here, but fail to ask the trial court to strike an enhancement when virtually identical grounds support dismissal. Defense counsel effectively argued that Patterson's crime was "committed because of a mental condition not amounting to a defense," and this unusual circumstance supported a grant of probation. (Cal. Rules of Court, rule 4.413(c)(2)(B).) He argued that Patterson's mental illness constituted "psychological trauma" that was "a factor in the commission of the crime" warranting imposition of the lower term. (Cal. Rules of Court, rule 4.423(b)(3).) Yet he failed to invite the court to dismiss the enhancement on the ground that "[t]he current offense [was] connected to [Patterson's] mental illness." (§ 1385, subd. (c)(2)(D).)

To demonstrate ineffective assistance of counsel, a defendant must not only demonstrate that counsel's performance was deficient, but must also show the deficiency prejudiced his defense. (*Wiggins v. Smith* (2003) 539 U.S. 510, 521, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, at p. 694.) In demonstrating prejudice, the defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937 (*Williams*).)

Even assuming Patterson's trial counsel performed deficiently by failing to present a clear invitation to the trial court to dismiss the great

8

bodily injury enhancement, we conclude there is no reasonable probability the court would have done so had the invitation been made. This is because subdivision (c)(2) of section 1385 states that dismissal of enhancements is not justified if the trial court finds it would "endanger public safety." (See § 1385, subd. (c)(2).) This provision means that if the court finds dismissal of an enhancement " 'would endanger public safety,' " then the court need not even consider the listed mitigating circumstances, which includes whether a defendant's mental illness was connected to the offense. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296; § 1385, subd. (c)(2)(D).) The trial court here effectively made this very finding.

" 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) In support of its decision to refuse to place Patterson on probation, the trial court specifically found that "it is likely [Patterson] will be a danger to others if not in prison." And in support of its decision to impose the midterm, the trial court found true the aggravating circumstance that Patterson "has engaged in violent conduct that indicates a serious danger to society." (Cal. Rules of Court, rule 4.421(b)(1).)

We agree with the Attorney General the trial court's finding that Patterson presents a serious danger to others has ample support in the record. Patterson's criminal history spans three decades. Many of his convictions involve violence or serious risk of violence, including driving under the influence, burglary, exhibiting a firearm to resist arrest, disturbing the peace, elder abuse, and aggravated assault. When placed on probation in 2014, he failed to remain law-abiding and was ultimately sentenced to prison. He was on probation when he committed the underlying violent crime. He was also armed with a knife, he committed the underlying offense without

9

provocation, and he has expressed no remorse. Most recently, his medication compliance in jail was poor and characterized by "multiple medication refusals," and a psychologist who examined him opined that he presents "a danger to others" when he does not take his antipsychotic medication.

On this record, we conclude there is no reasonable probability the trial court would have imposed a shorter sentence had counsel explicitly invited dismissal of the enhancement. The upshot of the trial court's sentencing choices is that considerations of public safety supported a six-year prison term—not a five-year term—when weighed against any relationship between the offense and Patterson's mental illness. In other words,, the court was sufficiently concerned with public safety to decline the one-year reduction in Patterson's sentence that would have occurred had it imposed the lower term as Patterson's counsel requested. Given this decision, and the abundant evidence that Patterson presents a danger to others, it is all but certain the court would not have accepted an invitation by Patterson to dismiss the great bodily injury enhancement and order an even larger reduction in his sentence—three years as opposed to one year—in the face of its public safety concerns. We reject Patterson's conclusory, speculative, and undeveloped argument to the contrary. (See *People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8 ["We need not consider such a perfunctory assertion unaccompanied by supporting argument."]; *People v. Jones* (1998) 17 Cal.4th 279, 304 [rejecting appellant's claim where it was presented "perfunctorily and without supporting argument"].)

## II.

### *Financial Assessments Must Be Stricken Not Stayed*

The parties agree the trial court erred when it stayed Patterson's court operations assessment (Pen. Code, § 1465.8) and criminal conviction

10

assessment (Gov. Code, § 70373).  Pursuant to *Dueñas*, *supra*, 30 Cal.App.5th 1157, the court found that Patterson did not have the ability to pay these assessments.  We accept the Attorney General's concession that the court erred when it stayed them instead of striking them.  (See *People v. Castellano* (2019) 33 Cal.App.5th 485, 490, 491.)

## DISPOSITION

The $80 court operations assessment and $60 criminal conviction assessment are stricken.  As modified, the judgment is affirmed.  The superior court clerk is directed to prepare a new sentencing minute order and a new abstract of judgment reflecting these changes and to forward certified copies to the Department of Corrections and Rehabilitation.  (§§ 1213, 1216.)


DO, J.


WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.

11