Filed 8/7/25  P. v. Caballero CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIO CABALLERO,<br><br>    Defendant and Appellant. | H051932<br>(Santa Clara County<br> Super. Ct. Nos. C1806889,<br>  C1809096, C2204063) |

    Appellant Mario Caballero was convicted by plea of assault on a police officer, assault with a deadly weapon, and possession of a firearm by a felon in three cases that were consolidated for sentencing.  Along with other terms and conditions, the trial court sentenced appellant to a total aggregate term of 22 years in prison, imposed a $5,000 restitution fine pursuant to Penal Code section 1202.4, subdivision (b)(2),[1] suspended an additional $5,000 fine pending successful completion of parole pursuant to section 1202.45, and waived all other fines, fees and penalty assessments.  Appellant contends the court abused its discretion and violated his due process rights by imposing the restitution fine based on his ability to earn future prison wages.  We discern no error and affirm the judgment.

    [1] Statutory references are to the Penal Code unless otherwise specified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Crimes[2]

#### Case A: C1806889

In November 2018, police officers were sent to appellant's residence following multiple reports of a family disturbance. Appellant's mother and his brother's girlfriend reported that he was exhibiting paranoid behavior and appeared under the influence of methamphetamine. The girlfriend claimed appellant threatened her with a firearm.

While the officers were speaking to a neighbor, appellant, wearing a bandana over his face, exited the front door of the house, and fired a single shot in the direction of three police officers, standing about 150 feet away. One officer returned fire, hitting appellant who fell to the ground and then ran back into the house. From there, appellant fired multiple shots, with one shot close enough for the officers' body cameras to capture a "whizzing" sound of the bullet passing by them.

After verbal directives, phone calls, and deployment of chemical agents into the house, appellant emerged from a second-story window, climbed onto the roof of the house, and fell into the backyard. A police canine was used to take appellant into custody. Appellant sustained injuries from a canine bite, a bullet wound to his right arm, and to his spine from the fall. Appellant was transported to the hospital for treatment of his injuries prior to being booked into the county jail.

A search of the property yielded spent casings inside and outside the residence, as well as two handguns that had been reported stolen and a glass pipe. Appellant admitted to taking Vicodin and methamphetamine prior to the incident.

On November 28, 2018, the Santa Clara County District Attorney filed a felony complaint charging appellant with multiple felonies and enhancements. An amended

---

[2] Because the appeal is limited to the exercise of discretion on the imposition of the restitution fines, we state the facts related to the underlying convictions summarily and take them from the probation report and the police report in the record.

felony complaint was filed on February 3, 2023, charging appellant with two counts of attempted murder of a peace officer (§§ 187, subd. (a), 664, subd. (f)), being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and four counts of assault with a semiautomatic firearm on a police officer (§ 245, subd. (d)(2)). It was further alleged that appellant personally and intentionally discharged a firearm in the commission of the attempted murder and assault with a semi-automatic firearm on a police officer. (§ 12022.53, subds. (c), (g).) Finally, in addition to aggravating factors to support the imposition of the upper term, the amended complaint alleged that appellant was out of custody on supervised own recognizance on another case when he committed the offenses. (§ 12022.1).

### Case B: C1809096

In May 2018, police officers responded to a call of a driver chasing people and threatening to shoot someone. When they arrived, the officers identified appellant as the driver and noticed he appeared to be under the influence. Upon searching his vehicle, the officers discovered a silver handgun with ammunition in the magazine. A records check revealed that appellant was not permitted to possess a firearm due to a prior felony conviction.

On November 26, 2018, appellant was charged with being a felon in possession of a firearm (§ 29800, subd. (a)(1)), carrying a concealed firearm in a vehicle (§ 25400, subd. (c)(1)), using a controlled substance (Health & Saf. Code § 11550, subd. (a)), and being a felon in possession of ammunition (§ 30305, subd. (a)(1)).

### Case C: C2204063

In June 2021, while incarcerated and awaiting trial in the above referenced cases, appellant participated in a gang-motivated physical altercation involving 18 other inmates. Appellant, carrying a seven-inch shank with a sharpened metal point tip, attempted to stab several inmates. He was struck and fell to the ground; however, he got back up, continued fighting, and attempted to stab another inmate in the head. Appellant

ignored the sheriff deputies' orders to get on the ground until he was pepper-sprayed, at which point he released the shank. Most of the participants sustained mild injuries.

On April 11, 2022, appellant was charged with three counts of assault with a deadly weapon (§ 245, subd. (a)(1)), three counts of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)), participating in a criminal street gang (§ 186.22, subd. (a)), criminal street gang conspiracy (§ 182.25), and possessing a weapon while in penal custody (§ 4502, subd. (a)). It was further alleged that appellant committed the assault and weapon possession offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(B)). The complaint also included aggravating factors to justify the imposition of the upper term.

## B. The Plea and Sentencing Hearing

On January 23, 2024, appellant entered pleas of no contest in Case A to three counts of assault on a peace officer with a firearm (§ 245 subd. (d)(2); Counts 4, 5 & 7) and one allegation of personal use of a firearm (§ 12022.53, subd. (b) as to Count 4); in Case B, to being a felon in possession of a firearm (§ 29800, subd. (a)(1); Count 1); and in Case C, to one count of assault with a deadly weapon (§ 245, subd. (a)(1); Count 5) with an attendant gang enhancement (§ 186.22(b)(1)(B)). The trial court dismissed the remaining charges in all three cases and set the matter for sentencing.

Prior to the sentencing hearing, the probation officer's report was filed, which included appellant's education and employment history. Appellant obtained a high school diploma in 2005 and completed a two-year vocational training in automotive technology in 2007. Appellant had worked in mechanic shops, most recently at Tesla; however, his employment had not been stable for any significant period. At the time of sentencing, appellant was 37 years old and had a seven-year-old child. Appellant stated that he planned to enroll in a trade and/or college course while in prison. Along with other fines, fees and assessments totaling $350, the probation officer recommended the

4

court impose a restitution fine in each case as follows: $10,000 in Case A; $600 in Case B; and $600 in Case C.

On February 22, 2024, the court held the sentencing hearing. Appellant's trial counsel agreed that he had an opportunity to consider and read the probation report. Per the stipulation of the parties, the trial court sentenced appellant to a total term of 19 years and four months in Case A, two years in Case B to run concurrently with the sentence in Case A, and two years and eight months in Case C. The total aggregate term for all three cases was 22 years.

Appellant's counsel requested that all fines and fees be waived pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). The trial court partially granted the request, stating, "Given the amount of time that your client is ordered to serve in prison, I believe he'll have the time to pay some restitution. I'm not going to issue the entire amount of $10,000. I'm going to issue half of that. But all other fines and fees will be waived." Appellant's counsel argued appellant had no ability to pay even the reduced amount of $5,000 because he had been unemployed since his incarceration in 2018. The trial court responded, "I do think that [appellant] has the opportunity and the ability to pay some restitution to the victims of the crime." His counsel argued that *Dueñas* did not allow the court to look forward to future ability to earn money in prison in setting fines. Appellant did not raise any other objections, present evidence, or request the opportunity to present evidence on appellant's inability to pay.

The trial court imposed the restitution fine of $5,000 pursuant to the formula under section 1202.4, subdivision (b)(2), deviating from the probation officer's recommendation of $10,000. Again, the court indicated that it was "making it half [of the recommended amount], which the Court's [sic] believes the defendant can pay off while he's in prison for the next 19 years." The court ordered an additional restitution fine imposed and suspended pursuant to section 1202.45. The court then waived '[t]he

5

remaining court security fee, criminal conviction fee and all other assessments per *Dueñas*."

Following the trial court's orders, appellant's counsel raised the issue of the restitution fine again, stating that he was not arguing with the court's ruling, but wanted to make a record. He requested the court to stay the execution of the restitution fine pending the district attorney's satisfaction of proof on appellant's ability to pay. Specifically, appellant's counsel stated, "The holding on *Dueñas* says we remand the case to the trial court with directions to stay the execution of Penal Code section 12022.4 restitution fine unless and until the People prove that [the defendant] has the present ability to pay it. [¶] And that is consistent with the holding that it's the present ability to pay to [sic] fine." The trial court then affirmed the imposition of the restitution fine in Case A, and the waiver of the other restitution fines per *Dueñas*.

## II. DISCUSSION

Appellant asserts that the trial court abused its discretion and violated his constitutional right to due process by arbitrarily and irrationally imposing a $5,000 restitution fine. Appellant contends that, as an indigent inmate, he has no ability to pay the fine, and the court improperly considered his future ability to pay in setting the amount. Appellant asks this court to vacate the fine. The Attorney General argues that the court acted within its discretion to impose the restitution fine and, under due process principles, the fine was not unconstitutional.[3]

---

[3] The Attorney General also contends that we should review this issue under the "excessive fines clause" of the Eighth Amendment to the federal Constitution. We decline to adopt that approach as appellant did not raise an Eighth Amendment challenge in his opening brief nor argue that the restitution fine is unconstitutionally excessive. Moreover, appellant submitted a letter in lieu of a reply brief stating that he had adequately addressed the appellate issues in the opening brief, and thus, it does not appear appellant intends to make such a challenge.

6

### A. Legal Principles and Standard of Review

Pursuant to section 1202.4, subdivision (b), the trial court is mandated to impose a punitive restitution fine of no less than $300 and no more than $10,000 for every felony conviction, unless it finds compelling and extraordinary reasons not to do so. A defendant's inability to pay "shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (*Id.*, subd. (c).) In setting the amount, the court may utilize the following formula provided in the statute: the minimum $300 fine multiplied by the number of years of imprisonment a defendant must serve, multiplied by the number of felony convictions. (*Id.*, subd. (b)(2).)

When setting a restitution fine above the $300 minimum for a felony conviction, the court "shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, . . . the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime." (§ 1202.4, subd. (d)). The court need not make any express findings on the factors it considered in setting the amount of the fine. (*Ibid.; People v. Avila* (2009) 46 Cal.4th 680, 729.) The court is also not required to set a separate hearing. (§ 1202.4, subd. (d).)

When assessing a defendant's inability to pay, the court may consider future earning capacity (§ 1202.4, subd. (d)), including "potential prison pay during the period of incarceration to be served by the defendant." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490 (*Castellano*).) "[T]he evaluation of ability to pay must include future ability to pay." (*People v. Cowan* (2020) 47 Cal.App.5th 32, 49, review granted June 17, 2020, S261952; but see *Dueñas*, *supra*, 30 Cal.App.5th at p. 1164 ["due process of law requires the trial court to. . . ascertain a defendant's *present* ability to pay" before imposing assessments. (Italics added.)].) The defendant bears the burden of demonstrating their inability to pay. (§ 1202.4, subd. (d); *People v. Santos* (2019) 38

7

Cal.App.5th 923, 934 (*Santos*) ["[I]t is the defendant's burden to demonstrate an inability to pay, not the prosecution's burden to show the defendant *can* pay"].))

This restitution fine is set at "the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute." (*Dueñas*, *supra,* 30 Cal.App.5th at p. 1169.) It is also punitive and mandatory. (*Ibid.*) It is within the court's discretion to order the maximum fine. (*People v. Thompson* (2022) 83 Cal.App.5th 69, 122.)

A trial court's determination regarding the defendant's ability to pay a restitution fine or assessment is reviewed for abuse of discretion. (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1043 (*Ramirez*); *People v. Potts* (2019) 6 Cal.5th 1012, 1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321.) A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

## B. *Dueñas And its Aftermath*

In *Dueñas*, an indigent and homeless mother of young children pleaded no contest to driving with a suspended license. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1160.) The trial court placed her on probation and imposed fines and assessments totaling $220, which the defendant claimed she had no means to pay. (*Id.* at pp. 1161-1162.) The trial court agreed that the defendant lacked the ability to pay the fines and assessments but believed that her inability to pay was irrelevant to the court's consideration. (*Id.* at p. 1163.) The Second District Court of Appeal reversed the order imposing the court operations and court facilities assessments after concluding that it was "fundamentally unfair" and violated the defendant's due process rights under the federal and California Constitutions to impose the assessments without determining the defendant's "present ability" to pay these amounts. (*Id.* at p. 1168.) The court also concluded that "the execution of any restitution fine under [section 1202.4] must be stayed unless and until

8

the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Id.* at p. 1164.)

A different panel of the same court that decided *Dueñas* later clarified that, consistent with *Dueñas*, the defendant "must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and[,] at a hearing[,] present evidence of his or her inability to pay. . . ." (*Castellano*, *supra*, 33 Cal.App.5th at p. 490.)

Since then, panels of this court and other appellate courts have reached conflicting conclusions on whether *Dueñas* was correctly decided. (See, e.g., *People v. Hicks* (2019) 40 Cal. App.5th 320, 325–329; *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 860 [joining "those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments discussed in *Dueñas*"]; *Santos*, *supra*, 38 Cal.App.5th at pp. 933–934; *People v. Adams* (2020) 44 Cal.App.5th 828, 831–832, review den. Apr. 15, 2020, S261092 (*Adams*); *People v. Petri* (2020) 45 Cal.App.5th 82, 92.) Moreover, the issue is pending before the California Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844 (*Kopp*).)

The California Supreme Court has granted review of *Kopp* to address the following issues in light of *Dueñas*: "(1) Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and (2) If so, which party bears the burden of proof regarding defendant's inability to pay. [Citation.]" (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 224, fn. 8.) These issues remain pending before our high court.

### C. Analysis

Appellant contends the trial court abused its discretion by "arbitrarily and irrationally" setting the restitution fine at $5,000 based on his theoretical ability to earn prison wages. Vaguely referencing "*Dueñas* and its progeny[,]" appellant asserts "the

9

mere fact that a defendant is serving a state prison sentence does not in any way equate to an ability to earn prison wages." Appellant contends there was no evidence demonstrating his eligibility for employment or the existence of employment opportunities in prison. As a result, citing *Dueñas*, appellant contends the court's arbitrary and irrational decision violates his constitutional right to due process.

Assuming arguendo that *Dueñas* was correctly decided and due process principles apply, appellant has not persuaded us that the trial court abused its discretion and violated due process by finding he would be able to pay the restitution fine.[4]

Notably, the trial court granted appellant's request, in part, under *Dueñas.* The court reduced the restitution fine by half of the amount proposed by the probation officer and waived the remainder of all fines and fees. Considering the gravity of the offenses, the multiple victims involved, and the violent circumstances surrounding each conviction (shootout with police officers, participation in a prison fight with a homemade shank, and unlawful possession of a firearm), the restitution fine of $5,000 in this case was well within the trial court's discretion to impose.

Although the trial court determined that appellant did not have the ability to pay the amount proposed by the probation officer (over $10,000 in fines, fees and

[4] Appellant contends his constitutional challenge is a question of law subject to de novo review. However, assuming *Dueñas* was correctly decided, the trial court considers the constitutionality of the restitution fine only after the defendant raised the issue, requested a hearing, and presented evidence of his inability to pay. (*Castellano*, *supra*, 33 Cal.App.5th at p. 490 [due process protections stated in *Dueñas* are not triggered in the absence of evidence of a defendant's inability to pay].) Otherwise, appellant's contention would require the court to consider the constitutionality of restitution fines in every case, even where the defendant is able to pay, which is not the law under *Dueñas* or otherwise. "Our holding in *Dueñas* that the fees and assessments could not constitutionally be assessed and that execution of the restitution fine had to be stayed was based on the trial court's *uncontested* finding that [the defendant] was unable to pay the amounts imposed." (*Id.* at p. 490, italics added.) As detailed herein, because appellant has not crossed the initial hurdle regarding his inability to pay, we need not reach his constitutional arguments. Even if we consider such arguments, our de novo review of the record reveals no error.

assessments), it did find he had the ability to pay the reduced amount. Noting appellant's prison term of 19 years, the court responded: "I do think that [appellant] has the opportunity and ability to pay some restitution[.]" Appellant's counsel did not challenge those findings and, instead, argued that the law, under *Dueñas*, prohibited the court from looking at appellant's future ability to earn prison wages and that the court's determinations must be based on his "present" ability.[5] His argument, however, does not require reversal of the judgment. A court may properly consider potential prison wages in determining an ability to pay fines and assessments. (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1101; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1077 (*Aviles*).) Section 1202.4 also expressly authorizes the court to consider "the defendant's future earning capacity." (§ 1202.4, subd. (d).) A different panel of the same court that decided *Dueñas* subsequently recognized that the court may consider "potential prison pay during the period of incarceration to be served by the defendant." (*Castellano*, *supra*, 33 Cal.App.5th at p. 490, fn. omitted.) Further, a court is not precluded from considering other relevant factors, including earning capacity after release from prison. (See *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229; *Aviles*, at p. 1076; *Santos*, *supra*, 38 Cal.App.5th at p. 934.) Because a trial court is not required to make express findings concerning a defendant's ability to pay a restitution fine, the absence of express findings does not demonstrate it failed to consider relevant factors. (See *Ramirez*, *supra*,10 Cal.5th at p. 1043; § 1202.4, subd. (d); see also Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].) Moreover, just because it may take many

_____

[5] For the first time on appeal, appellant cites to prison employment statistics and prison wage schedules to argue that, even if he is able to secure employment in prison, "it will be impossible for him to pay off the $5,000 in fines and fees by the time he is released from prison." None of this information was presented to the trial court at the sentencing hearing, nor has appellant sought to include such new information in the record. Thus, we decline to consider it for the first time on appeal. (*People v. Peevy* (1998) 17 Cal.4th 1184, 1207 ["an appellate court generally is not the forum in which to develop an additional factual record"].)

years to earn the amount owed in fees and fines with prison wages does not mean a defendant lacks the ability to pay under *Dueñas.* (*Aviles, supra*, at p. 1077.)

Finally, the record here supports the trial court's determination that appellant has the ability to pay the $5,000 restitution fine. As documented by the probation officer's report, at the age of 37, appellant is a relatively young man. He completed high school, attended trade school, and held a variety of mechanics jobs prior to his arrest. Appellant indicated a desire to enroll in a trade and/or to further his education in college courses while incarcerated. Although he suffered injuries during the commission of the underlying crimes, there was no evidence in the record that such injuries impaired his earning capacity at the time of the sentencing hearing or in the future. As noted, appellant presented no evidence to the trial court demonstrating that he would be unable to work in the future, but rather suggested his intent to do so.

In conclusion, the record reflects that the court considered the request to waive the fines and fees, and thoughtfully considered both the defendant's current ability to pay as well his future ability to pay by reducing the statutorily authorized restitution fine by half and waiving all remaining fines and fees.

We cannot conclude based on this record that the trial court abused its discretion or violated due process in determining appellant had an ability to pay the restitution fine. Therefore, appellant has not demonstrated error in the trial court's imposition of the restitution fine.

## III. DISPOSITION

The judgment is affirmed.

12

_____
                                                    Rodriguez, J.*

WE CONCUR:



_____
Danner, Acting P. J.




_____
Wilson, J.



*People v. Caballero*
H051932

_____

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.