Filed 2/18/26  P. v. Sanchez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEVEN RANGEL SANCHEZ, JR.,<br><br>Defendant and Appellant. | B346454<br><br>(Los Angeles County<br>Super. Ct. No. 24CJCF06943) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette Verastegui, Judge.  Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

# INTRODUCTION

Steven Rangel Sanchez appeals from the restitution order entered by the trial court after he pleaded no contest to felony possession of a firearm by a felon. Sanchez argues the trial court's imposition of a $300 statutory minimum restitution fine and $70 in ancillary costs after a hearing on his inability to pay was a violation of due process and an abuse of discretion because he had no realistic ability to pay the amounts imposed. We affirm the imposition of the ancillary costs. We stay the imposition of the restitution fine and remand to give Sanchez the opportunity to assert an excessive fines challenge to the restitution fine, pursuant to *People v. Kopp* (2025) 19 Cal.5th 1 (*Kopp*).

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *Sanchez's No Contest Plea and Sentencing*

In November 2024, after responding to a report of gunshots, Los Angeles Police Department officers saw Sanchez holding a firearm and retrieved a gun, a magazine, and spent casings from Sanchez's vicinity. He spontaneously told the officers he took his uncle's gun and shot into the air.

Sanchez was charged with negligent discharge of a firearm (Pen. Code, § 246.3, subd. (a)) and possession of a firearm by a felon with a prior violent conviction (§ 29900, subd. (a)(1)).[1] A 2022 conviction was alleged as a prior "strike." (§§ 667, 1170.12.)

---

[1]     Undesignated statutory references are to the Penal Code.

2

Sanchez pleaded no contest to possession of a firearm by a felon (§ 29900, subd. (a)(1)) and admitted the prior strike conviction (§ 1170.12). The trial court dismissed the charge of negligent discharge of a firearm and sentenced Sanchez to 32 months in prison. The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), and a $30 court facilities assessment (Gov. Code, § 70373). The court further imposed and stayed a $300 parole revocation restitution fine (§ 1202.45). No additional victim restitution was requested or ordered.

Sanchez's counsel asked for fees and fines to be waived, arguing Sanchez was homeless at the time he was arrested and would be unable to pay the amounts even if he earned state prison wages while incarcerated. The court set a hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), disapproved in part as stated in *Kopp, supra*, 19 Cal.5th at p. 23, fn. 17 (*Kopp*), to determine Sanchez's ability to pay. Defense counsel submitted a memorandum in advance of the hearing, arguing Sanchez was indigent and would only be able to earn very low pay in state prison wages, with many positions only offering half-time hours.

At the *Dueñas* hearing, the court denied Sanchez's motion to waive fines and fees. The court acknowledged Sanchez was transient and indigent when he was arrested, which could justify a stay of fines and fees if someone were on probation. However, the court noted Sanchez would be able to earn prison wages during his 32-month sentence, and there was no showing he was disabled or unable to work. The court stated, "you have not provided me anything that demonstrates he's unable to contribute, even nominally. ¶ Just the fact that the wages are so

3

low, but that—that goes for everybody that's incarcerated, that is sentenced to state prison." "You have not provided me anything that would suggest [inability to work], and so, at this point, my order stands unless you can demonstrate that he is unable, due to a mental health issue, crisis, or physically unable to secure employment, then the court will [] revisit it." Defense counsel argued Sanchez would not realistically be able to earn and pay the full amounts imposed from prison wages before the time he was released, and the need to earn wages toward repayment could hinder Sanchez from participating in other rehabilitation programs during his sentence. The court noted it was not imposing "anything beyond the bare minimum" on Sanchez, and stated, "[i]f in any way, shape, or form, at the conclusion of the sentence, they haven't been [paid], you can always bring it back to court, and I will waive the remaining balance . . . ."

Sanchez timely appealed.

## DISCUSSION

A.      *Governing Law and Standard of Review*

"A person convicted of a crime can, and in some cases must, be ordered to pay a variety of punitive fines along with other nonpunitive ancillary costs. Some statutes require the imposition of fines and ancillary costs regardless of a defendant's ability to pay. Other statutes require a finding of the ability to pay or allow for its consideration." (*Kopp, supra,* 19 Cal.5th at p. 11.) Restitution fines under section 1202.4 are considered punitive fines, whereas assessments to fund court facilities and operations are considered ancillary costs. (See *id.* at pp. 14-15.) "[T]he distinction between punitive fines and other imposed payments is

4

important because it impacts whether a given form of required payment is initially challenged under, and then reviewed under, the constitutional excessive fines clauses, or under the constitutional provision for equal protection." (*Id.* at p. 12; see *id.* at p. 18 ["we analyze fines and ancillary costs separately because different justifications support each, and different constitutional protections apply"].)

As relevant here, if requested by a defendant, the court must consider the defendant's inability to pay before imposing a court operations assessment under section 1465.8, subdivision (a)(1), or a court facilities assessment under Government Code section 70373, subdivision (a)(1). (*Kopp, supra,* 19 Cal.5th at p. 31; *id.* at p. 30 ["in light of the Legislature's provision of fee waivers to indigent civil litigants, equal protection principles require a court, upon request, to consider a defendant's inability to pay" before imposing either assessment].) These assessments and amounts are mandated by statute. (§ 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense . . . ."]; Gov. Code, § 70373, subd. (a)(1) ["To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense . . . in the amount of thirty dollars ($30) for each misdemeanor or felony . . . ."]; see *Kopp,* at pp. 25-26 ["Both the court operations and facilities assessments must be imposed for every criminal conviction except parking offenses."].)

Punitive fines are subject to a different approach. The California Supreme Court recently clarified there is no "due process requirement to hold an ability to pay hearing before

5

imposing every punitive fine." (*Kopp, supra,* 19 Cal.5th at p. 23, disapproving *Dueñas, supra,* 30 Cal.App.5th 1157.) " 'Sentencing judges may, and often do, consider the defendant's ability to pay, but in such circumstances they are guided by sound judicial discretion rather than by constitutional mandate.' " (*Kopp*, at pp. 22-23, quoting *San Antonio Indep. Sch. Dist. v. Rodriguez* (1973) 411 U.S. 1, 22.) A court has discretion to "impose a nonexcessive fine as punishment," even on indigent defendants. (*Kopp,* at p. 21 [punitive fines may be imposed on an indigent defendant "at the outset [of a sentence] and arrangements made to allow for some form of repayment"].) Thus, "the excessive fines analysis, which considers ability to pay, is the proper vehicle to challenge punitive fines." (*Id.* at p. 23; see U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) The " 'touchstone of the constitutional inquiry' " for excessive fines " 'is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.' " (*Kopp*, at p. 23, quoting *United States v. Bajakajian* (1998) 524 U.S. 321, 334.) "While ability to pay may be part of the proportionality analysis, it is not the only factor." (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1057 (*Lowery*).)

Under section 1202.4, subdivision (b), "[t]he restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) . . . ." (*Id.*, subd. (b)(1).) "The court shall impose the restitution fine unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine.

Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine."[2] (*Id.*, subd. (c); see *Kopp, supra,* 19 Cal.5th at p. 13.)

"A court's ruling on ability to pay is reviewed for abuse of discretion." (*Kopp, supra,* 19 Cal.5th at p. 24; see *People v. Wilson* (2023) 14 Cal.5th 839, 868.) The defendant bears the burden of demonstrating his or her inability to pay the imposed amounts. (See *Lowery, supra,* 43 Cal.App.5th at p. 1057, 1053; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 (*Castellano*), disapproved in part as stated in *Kopp,* at p. 23, fn. 17.)

B.      *The Trial Court Did Not Abuse Its Discretion By Imposing the Ancillary Costs*

Sanchez argues the trial court violated his due process rights by imposing the restitution fine under section 1202.4, and assessments under section 1465.8 and Government Code section 70373, because the court erred by finding he had not shown inability to pay.

Sanchez cites *Dueñas, supra,* 30 Cal.App.5th 1157, which held that due process prohibits imposing punitive fines and court assessment fees on a defendant who lacks the ability to pay. *Dueñas* involved a homeless and indigent criminal defendant and reversed the trial court's order of assessments under

_____

[2]      In setting a felony restitution fine, the court also ordinarily has discretion to "determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).)

7

section 1465.8 and Government Code section 70373, and stayed the imposition of a restitution fine under section 1202.4 "unless and until the People prove that Dueñas has the present ability to pay it." (*Dueñas*, at pp. 1172-1173.)  Sanchez argues that, under *Dueñas*, the $70 in mandatory court assessments must be stricken, and the $300 restitution fine stayed, because the court erred by ruling he had the ability to pay them.

As noted above, the California Supreme Court in *Kopp* disapproved *Dueñas* in part, but it held that an ability to pay hearing is required, at the defendant's request, for ancillary fees, such as the court assessments challenged here, not as a matter of due process but rather based on equal protection principles. (*Kopp, supra,* 19 Cal.5th at pp. 30-31 & fn. 17.)  Here, the trial court held such a hearing and considered Sanchez's inability to pay before imposing the $40 court operations assessment under section 1465.8, subdivision (a)(1) and the $30 court facilities assessment under Government Code section 70373, subdivision (a)(1).  (See *Kopp,* at pp. 14-15.)  In reaching its conclusion that Sanchez did not meet his burden to show his inability to pay these ancillary costs, the court considered Sanchez's potential to earn wages while in prison and his general ability to work, which was within its discretion to do.  (See *People v. Fish* (2024) 102 Cal.App.5th 730, 739 [collecting cases]; *People v. Santos* (2019) 38 Cal.App.5th 923, 934 [factors to consider in determining ability to pay may include, among others, the defendant's "realistic ability to earn prison wages or obtain employment"]; *Castellano, supra,* 33 Cal.App.5th at p. 490 [trial court may consider "potential prison pay during the period of incarceration" in determining inability to pay].)

8

The court also considered that Sanchez made no showing he was mentally or physically disabled, in crisis, or otherwise unable to work. It considered Sanchez's argument that he might not earn prison wages sufficient to pay off all his fines and fees before the end of his sentence, and his evidence of prison wage scales, and concluded he had not met his burden to show inability to pay. In so doing, the trial court did not state that it was relying solely on Sanchez's ability to earn wages while in prison. The court found simply that he is capable of working. (See *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229 [ability to pay includes the ability both to obtain prison wages and to earn money after release from custody].) Sanchez was 36 years old when sentenced to 32 months in prison, with 209 days in credits, and made no showing he was disabled or unable to work. The trial court's conclusion that he had the ability to pay $70 in court assessments was not arbitrary or irrational. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

C.     *Sanchez May Challenge the Restitution Fine as Constitutionally Excessive on Remand*

Although the court held an inability to pay hearing, this is not dispositive of the $300 restitution fine, which is subject to a different analysis than the ancillary costs.

After the trial court sentenced Sanchez, the high court in *Kopp* held that an excessive fines analysis under the state and federal constitutions "is the proper vehicle to challenge punitive fines." (*Kopp, supra,* 19 Cal.5th at p. 23.) Because Sanchez did not have the benefit of *Kopp*'s reasoning and did not invoke the

9

excessive fines clauses in the trial court, consistent with *Kopp*, "[w]e remand to give him the opportunity to assert the legal analyses applicable to such a challenge and argue how the particular facts of this case inform such an inquiry."  (*Ibid*.)

## DISPOSITION

The judgment and restitution order is affirmed as to the $40 court operations assessment under section 1465.8, subdivision (a)(1), and the $30 court facilities assessment under Government Code section 70373, subdivision (a)(1).  We stay the imposition of the restitution fine under section 1202.4 and remand to give Sanchez the opportunity to challenge the restitution fine under *Kopp*.


MARTINEZ, P. J.


We concur:



SEGAL, J.                              FEUER, J.


10