Filed 4/3/26  P. v. Barajas CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUILLERMO BARAJAS,<br><br>    Defendant and Appellant. | E085536<br><br>(Super.Ct.No. RIF2206196)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Randall S. Staman, Judge.  Affirmed.

Guillermo Barajas, in pro. per.; and Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

Guillermo Barajas appeals his conviction following a jury trial.  His attorney has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 informing this court they were unable to identify any errors and asking us to perform an independent review of the record.  We affirm.

BACKGROUND

Around eight to 10 years before November 2024, Barajas started dating L.A.  L.A. had two children already, including her daughter Jane Doe and an older son.  Barajas moved in with the family when Jane Doe was around eight years old.  After moving in, Barajas and L.A. had two children together.  Jane Doe initially liked Barajas, but came to dislike him and avoid him when she was home.

Starting when Jane Doe was around 14, Barajas came into Jane Doe's room and touched her vagina and buttocks three times.  He always waited until night-time, several hours after Jane Doe had gone to her room to sleep.  The first time, Jane Doe was dressed in leggings and Barajas rubbed her buttocks until she woke up.  Another time, Barajas came into Jane Doe's room dressed in just boxers and a tank-top, pulled Jane Doe's pants and underwear down, and rested something warm on her buttocks.  Jane Doe later testified Barajas was resting his penis on her buttocks, but admitted that she did not see his penis.  Jane Doe leapt up and asked him what he was doing, and Barajas left without saying anything.  The last time, Jane Doe was sleeping in bed with her younger brother.  Barajas entered her room to move her younger brother into his own bed.  As he was

2

grabbing Jane Doe's brother, he rested his hand on Jane Doe's vagina. Jane Doe was fully clothed and under a blanket; she testified that the touching occurred over her clothes, but was not clear whether it was over the blanket as well. He had his entire hand on her vagina for a few seconds. This final incident happened when Jane Doe was 14, which she could remember because it happened before she rearranged her room.

Barajas did not immediately report the incidents. When asked why, Jane Doe said it was because she worried her mom would not believe her, worried about the effect it would have on her younger siblings—Barajas's children—and worried about her family's financial situation if Barajas was no longer contributing. At some point she told Barajas she was going to tell her mom, but Barajas laughed and told her she was crazy. This made her start questioning whether the incidents actually happened.

Jane Doe told her mother about the incidents the day before she turned 15. She and her mother confronted Barajas the next day, and he denied everything. Jane Doe claimed Barajas said "if I did do it, I'm sorry," and L.A. recalled him saying sorry, but not more. Barajas later denied saying sorry or otherwise implying any wrongdoing. L.A. asked Jane Doe if she wanted to call the police, and Jane Doe declined. L.A. respected Jane Doe's wishes.

After the confrontation, Barajas refused to leave the family home for three to four months. Even after moving out, he continued to come back to care for his two children while L.A. worked. In October 2022, L.A. and Jane Doe called the police because they claimed Barajas took the two youngest children, crashed into L.A.'s car, and drove away,

3

all while L.A. suspected him of being drunk. When officers arrived, Jane Doe decided to also tell them about the incidents of abuse.

Jane Doe participated in a forensic interview. In the interview, she said the abuse started when she was 12, "around COVID time." The interviewer noted Jane Doe was extremely angry at Barajas, and particularly upset that he continued to live in the home after she told her mom about the inappropriate touching. Investigators also later questioned her at school in order to nail down her exact ages when the abuse occurred. Jane Doe's descriptions of the abusive conduct were consistent throughout all her interviews and statements to others.

In December 2023 the Riverside County District Attorney charged Barajas with one count of lewd and lascivious conduct with a child under 14 (Pen. Code § 288, subd. (a))[1] (Count 1), one count of lewd and lascivious conduct with a child between 14 and 15 (§ 288, subd. (c)(1)) (Count 2), one misdemeanor count of annoying and molesting a child (§ 647.6, subd. (a)) (Count 3), and one misdemeanor count of sexual battery (§ 243.4, subd. (e)(1)) (Count 4). The prosecution also alleged two aggravating factors: that Jane Doe was particularly vulnerable and that Barajas took advantage of a position of trust.

At trial, L.A. testified that she received texts from Barajas concerning the case, which investigators downloaded. In these texts Barajas told L.A. "[t]ell them whatever you have to say. If you want to sink me, sink me," and "[j]ust tell them that you drop off

---

[1] Unlabeled statutory citations refer to the Penal Code.

4

the kids, that I don't go to pick them up." He also warned her "[t]hat's why you got to say what it is or else they are going to take the kids from us." L.A. testified that these communications were about their youngest children, and that he never directed her to testify in a way that would make him look good.

In addition, the prosecution presented the testimony of an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). She did not know the facts of the case, but testified about CSAAS generally. Her testimony was offered to explain "that most sexual abuse victims . . . don't tell immediately."

Barajas also testified on his own behalf. He denied all the allegations, denied ever apologizing, and accused Jane Doe of lying because she was mad at him. He also denied trying to instruct L.A. on how to testify.

At the close of the prosecution's case, Barajas brought a motion under section 1118.1 as to Counts 1, 3, and 4. The Court denied the motion.

The jury convicted Barajas on all counts. The court found the vulnerable victim aggravating factor true, but did not find true that Barajas was in a position of trust. It sentenced Barajas to an aggregate term of seven years eight months, composed of six years for Count 1, eight months (one-third the midterm of two years) for Count 2, and 364 days on Count 3. The court imposed 180 days in county jail for Count 4, but stayed that term under section 654. The court imposed a restitution fine of $300, stayed the parole revocation fine, and found under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) that Barajas lacked the ability to pay any further fines or fees.

# DISCUSSION

We appointed counsel to represent Barajas on appeal, and counsel filed a brief setting forth a statement of the case and a summary of the facts and asking us to conduct an independent review of the record. Counsel's brief directed our attention to just one potential issue: whether the court erred in imposing a restitution fine despite waiving all other fines and fees under *Dueñas*. We offered Barajas an opportunity to file a personal supplemental brief. He did so, generally alleging that he was not effectively assisted by counsel and "was denied a fair opportunity to understand the proceedings and to defend [him]self in a meaningful way." However, Barajas's supplemental brief points to no specific errors—either by his counsel or by the trial court—which he contends denied him a fair trial or the ability to defend himself. (See *People v. Cardenas* (1997) 53 Cal.App.4th 240, 248 ["broad and conclusory assertions of prejudice are not enough; appellant must develop an argument that specifically substantiates his claim"].) Nor can we identify any.

Having independently reviewed the record for potential error and finding no arguable error that would result in a disposition more favorable to Barajas, we affirm the judgment.

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
                                              J.

We concur:


MILLER _____
            Acting P. J.


LEE _____
                    J.